THOMAS, Judge.
G. Scott Frazier (“the husband”) appeals from a judgment of the Tuscaloosa Circuit Court legally separating him from Patricia Ann Curry (“the wife”), awarding the wife child support, awarding the wife a portion of the husband’s retirement account, and awarding the wife $10,000 in attorney fees, among other things. We affirm in part, reverse in part, and remand with instructions.

Facts and Procedural History

The parties were married on December 27, 1991. There was one child born of the parties’ marriage. The parties separated in June 2008. On September 26, 2008, the wife filed a complaint seeking a divorce, and, on October 3, 2008, the wife amended her complaint for a divorce. On November 14, 2008, the husband filed a motion for recusal, alleging that the Tuscaloosa County domestic-relations judges were familiar with the parties; that same day the husband filed a motion requesting a pen-dente lite hearing. The trial judge re-cused himself, and subsequently another judge was appointed to hear the case. The trial court conducted a pendente lite hearing and, on February 27, 2009, entered a pendente lite order awarding the wife the right to reside in the marital residence during the pendency of the action and forbidding the parties to use marital assets to purchase real property during the pendency of the action.
On July 27, 2010, the trial court conducted a trial at which it heard ore tenus evidence. The evidence indicated the following. The parties both testified that the joint-custody arrangement they had agreed to was working and that that custody arrangement was in the best interest of the parties’ child. The wife testified that the husband had engaged in several adulterous relationships throughout the parties’ marriage, which, she said, had resulted in her having anger issues. The husband also testified that he had engaged in adulterous relationships throughout the parties’ marriage. The wife testified that she had graduated from the University of Alabama with a business degree, that she had worked as an office manager and as a legal secretary throughout most of the parties’ marriage, and that she was currently working as an office manager and making approximately $2,000 per month in gross income. The husband testified that he had been an attorney throughout the parties’ marriage and that his yearly income had fluctuated over the years. Specifically, he testified that his 2005 gross reported income was $331,896, that his 2005 gross reported income was $294,762, that his 2006 gross reported income was $70,602,[1] that his 2007 gross reported in *223 come was $42,541, that his 2008 gross reported income was $109,665, and that his 2009 gross reported income was $255,828. The husband also filed, with the trial court, a CS^41 form that listed his monthly income as $9,350. He further testified that he had already earned approximately $160,000 as 2010 employment income at the time of trial.
The parties testified that they had numerous assets, including several parcels of real property. Specifically, the parties owned a home in the Dunbrook neighborhood (“the marital residence”), a lake house on Lake Tuscaloosa (“the lake house”), property located at Gee’s Bend (“the Gee’s Bend property”), the husband’s law office (“the law office”), a 15th Street apartment (“the apartment”), property in Samantha (“the Samantha property”), property in Alberta (“the Alberta property”), and property in Tuscaloosa (“the Thigpen property”), which had a mortgage receivable in the amount of $942 per month. The wife had inherited the lake house, the Samantha property, and the apartment from her mother, and she owned partial interests in each of those pieces of real property with her sister and other relatives. The parties had also purchased the Gee’s Bend property during the marriage together with the husband’s parents, and the deed to that property listed all four parties as joint tenants with the right of survivorship.[2] It was also undisputed that the wife had used a portion of her inheritance to pay off the existing mortgages on the law office and the marital residence in 2006. None of the above-mentioned parcels of real property had any associated debt, with the exception of the Gee’s Bend property, which had an existing mortgage, and the marital residence, which was encumbered by a home-equity line of credit (“HELOC”) with an outstanding balance of $60,000 at the time of trial. Both parties testified that they had drawn money from the HELOC while the action was pending, and it is undisputed that the husband had been responsible for making the monthly payment on the HELOC during the pendency of the action.
In addition, the parties testified that they had two automobiles, a boat, and a personal watercraft. Each party had a retirement account. The wife’s retirement account contained approximately $217,000, while the husband’s retirement account contained approximately $410,000. The wife presented evidence indicating that on March 31, 1992, approximately three months after the parties’ marriage, the husband’s retirement account had had a value of $11,843.94 and that on March 31, 2010, approximately 22 months after the wife had filed the complaint for a divorce and 4 months before the trial date, the husband’s retirement account had had a value of $409,091.78. The wife further indicated that she had worked for the husband and his law firm without receiving a salary or retirement benefits for approximately 11 years.
Finally, the wife testified that she had paid her attorney $11,068.25 before the trial. Her attorney testified that the wife owed him $3,204.30 in unpaid fees, an additional $1,900 in unbilled fees, and roughly $2,800 for fees incurred for the July 2010 trial. The wife testified that she had paid a $5,000 retainer with money she had *224 drawn on the parties’ HELOC. She further testified that she was unsure of what funds she had used to pay the additional attorney fees she had paid; however, she indicated that it was possible that she had used the parties’ joint bank account, which the husband’s salary funded, her personal checking account, or another draw from the HELOC.
On April 15, 2011, the trial court entered a judgment legally separating the parties;[3] awarding the parties joint legal and physical custody of the child with custody alternating on a weekly basis; ordering the husband to pay $600 in monthly child support; ordering the husband to pay 70% of the following expenses related to the child: “[ajfter school care; summer camp/day camp; school fees and books; lunch money; school and church trips and programs; extracurricular/sporting activity fees and equipment; tutoring; camps; extracurricular lessons”; awarding the wife the marital residence, the Thigpen property, the lake house, and the Samantha property; awarding the husband the law office, the Alberta property, and the Gee’s Bend property; awarding the husband an automobile and the boat; awarding the wife an automobile and the personal watercraft; ordering the husband to pay $10,000 “toward” the wife’s attorney fees; ordering the wife to pay $20,000 of the HELOC debt; awarding the wife $2,000 in monthly periodic alimony; dividing the parties financial accounts; and awarding the wife all the interest in her retirement account and $85,000 from the husband’s retirement account, among other provisions not pertinent to the property division or this appeal. On May 16, 2011, the husband filed a motion to alter, amend, or vacate the trial court’s judgment and a motion to stay enforcement of the judgment. The trial court rendered a judgment on July 26, 2011, granting the husband’s postjudgment motion in part and denying his postjudgment motion in part and altering the husband’s monthly child-support obligation to $500 per month, altering the amount of periodic alimony the husband was to pay to the wife to the amount of $1,250, and requiring the wife to pay for the entire debt associated with the HELOC; all the other provisions of the original judgment remained in effect. On September 23, 2011, the husband timely appealed to this court.[4]

Issues

The husband raises three issues for this court’s review on appeal: (1) whether the trial court erred in requiring the husband *225 to cover 70% of the child’s expenses in addition to his $500 monthly child-support obligation; (2) whether there was insufficient evidence to support the trial court’s award of $85,000 of the husband’s retirement account to the wife; and (3) whether the trial court erred in awarding the wife $10,000 in attorney fees.

Standard of Review

“This court’s standard of reviewing a division of property pursuant to a judgment of divorce following ore tenus proceedings is well settled:
“““ “[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.” ’ ” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). “ ‘The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.’ ” Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). “Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.” Wattman v. Rowell, 913 So.2d at 1086.’
“Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).”
Blasdel v. Blasdel, 65 So.3d 428, 431 (Ala.Civ.App.2010).

Analysis

On appeal, the husband first argues that the trial court erred in requiring the husband to pay 70% of the child’s expenses related to the “[ajfter school care; summer camp/day camp; school fees and books; lunch money; school and church trips and programs; extracurricular/sporting activity fees and equipment; tutoring; camps; extracurricular lessons,” all of which are expenses in addition to his monthly child-support obligation. Specifically, he contends that the trial court erred to reversal in its award as to the child’s additional expenses because, he argues, there was no evidence indicating that the “expenses were reasonably related to the needs of the minor child or [whether the expenses] were extravagant and placed an undue financial burden on” him. We disagree.
In this case, it was undisputed that the parties’ adjusted gross income exceeded the uppermost levels of the child-support schedule in the appendix to Rule 32, Ala. R. Jud. Admin., as it existed in September 2008 when the wife filed her complaint for a divorce, and, thus, “the amount of child support should be left to the discretion of the trial court.” Dyas v. Dyas, 683 So.2d 971, 973 (Ala.Civ.App.1995) (citing Rule 32(C)(1), Ala. R. Jud. Admin.).[5] It is well settled that
“[w]hen the combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce, and *226 must reasonably relate to the obligor’s ability to pay for those needs.... To avoid a finding of an abuse of discretion on appeal, a trial court’s judgment of child support must satisfy both prongs.”
Dyas, 683 So.2d at 973-74 (footnote omitted).
Relying on Dyas, supra, the husband contends that the trial court erred in obligating him to pay for 70% of the child’s additional expenses because, he says, the evidence was insufficient to show that those additional expenses were related to the needs of the child and that he had the ability to pay those expenses. Initially, we note that the husband’s ability to pay his monthly child-support obligation in the amount of $500 was not in dispute; the evidence indicated that the husband had a monthly income of approximately $9,350, while the wife had a monthly income of approximately $2,000. We further note that the parties did not present much evidence regarding the child or his needs. However, although there was not an abundance of evidence regarding the child or the child’s needs, we cannot conclude that the trial court erred to reversal by requiring the husband to pay 70% of the expenses related to the child’s “[a]fter school care; summer camp/day camp; school fees and books; lunch money; school and church trips and programs; extracurricular/sporting activity fees and equipment; tutoring; camps; extracurricular lessons.” The inherent nature of the listed expenses is undisputedly related to the “reasonable and necessary needs of the child.” Id. at 973. Additionally, unlike a fixed monthly award for future potential expenses of the child like the award at issue in Dyas, supra, the award in this case requires both parties to contribute to those contingent expenses and the amount of the award is not fixed but inevitably will fluctuate depending only on the needs of the child.
Moreover, due to the contingent nature of the child-support award at issue in this case, the child-support provision is analogous to a requirement that the parties to a divorce split noncovered medical expenses of a child based on the parties’ respective incomes, which this court has consistently upheld. See West v. Rambo, 786 So.2d 1138, 1143 (Ala.Civ.App.2000) (finding “no error in the trial court’s ordering the father to pay the noncovered medical and dental expenses at the same percentage as his child-support obligation”); see also Daniel v. Daniel, 841 So.2d 1246, 1248-49 (Ala.Civ.App.2002). In this case, although the parties’ income exceeded. the uppermost limits of the child-support guidelines, the testimony and documentary evidence indicated that the husband’s income accounted for approximately 82% of the parties’ joint income, while the wife’s income accounted for approximately 18% of the parties’ joint monthly income. Thus, we find no error in the trial court’s judgment ordering the husband to pay 70% of the child’s additional expenses. Therefore, we affirm the trial court’s judgment insofar as it determined the husband’s child-support obligation.
Next, the husband argues that the trial court erred in awarding the wife $85,000 from the husband’s retirement account. He contends that the wife failed to present sufficient evidence to support an award of retirement benefits under Ala. Code 1975, § 30 — 2—51(b). Specifically, he argues that the wife failed to present any evidence indicating the portion of the husband’s retirement account accrued during the parties’ marriage and, thus, that the trial court’s judgment awarding the wife a portion of the husband’s retirement benefits is in error because the trial court did not account for what portion of benefits were acquired before the parties’ marriage and the applicable interest or appreciation *227 attributable to the premarital retirement benefits. We agree.
Section 30-2-51 (b), which governs the award of retirement benefits, states:
“(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
“(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
“(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
“(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court.”
The husband cites DuBois v. DuBois, 714 So.2d 308 (Ala.Civ.App.1998), in support of his argument on appeal. In Du-Bois, this court held that the trial court had erred in awarding the wife 50% of the husband’s retirement account because the trial court had failed to deduct “benefits acquired prior to the marriage” as required pursuant to § 30-2-51(b). Id. at 310. Specifically, this court stated that § 30-2-51(b)(2) “prohibits the trial court from including in the estate the value of benefits that had been acquired before the marriage.” Id.
In the present case, the record indicates that the evidence regarding the value of the husband’s retirement account was minimal, and the wife failed to present any expert testimony regarding the issue of the husband’s retirement account. The wife presented evidence indicating that on March 31, 1992, approximately three months after the parties’ marriage, the husband’s retirement account had had a value of $11,843.94 and that on March 31, 2010, approximately 22 months after the wife had filed the complaint for a divorce and 4 months before the trial date, the husband’s retirement account had had a value of $409,091.78. This constituted the totality of the evidence regarding the value of the husband’s retirement account. Thus, like in DuBois, the wife in the present action failed to present testimony indicating what amount of the husband’s retirement benefits had been acquired before the parties’ marriage and what amount of interest was attributable to benefits acquired before the marriage. Accordingly, we conclude that the wife failed to present sufficient evidence of the portion of the husband’s retirement account that was divisible pursuant to § 30-2-51(b), and, thus, the wife’s award of $85,000 of the husband’s retirement benefits is due to be reversed. See Piatt v. Piatt, 736 So.2d 632, 632-33 (Ala.CivApp.1999); Dunn v. Dunn, 891 So.2d 891, 895 (Ala.Civ.App.2004); McAlpine v. McAlpine, 865 So.2d 438, 441 (Ala.Civ.App.2002); and Applegate v. Applegate, 863 So.2d 1123 (Ala.Civ.App.2003). Therefore, we reverse the trial court’s judgment insofar as it awarded the wife a portion of the husband’s retirement account, and we remand the cause to the trial court to enter a judgment not awarding the wife any portion of the husband’s retirement account. Accordingly, because the trial court considered the husband’s retirement account to have been divisible property and because that award was a substantial part of the property division, we also reverse the trial court’s division of marital property and remand the cause to the trial court to reconsider its division of the marital assets in light of the fact that *228 the husband’s retirement account is not marital property and, thus, should not be considered in the property division. Furthermore, because the award of periodic alimony is considered in conjunction with the division of the marital assets, Henderson v. Henderson, 800 So.2d 595, 597 (Ala.Civ.App.2000), we must also reverse the trial court’s award of periodic alimony to the wife in order for the trial court to reconsider its award of alimony and marital property together.[6]
Finally, the husband argues that the trial court erred in awarding the wife $10,000 in attorney fees.
“Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’ Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App.1986).”
Glover v. Glover, 678 So.2d 174, 176 (Ala. Civ.App.1996).
We pretermit discussion of the wife’s $10,000 attorney-fee award. In this case, the financial circumstances of the parties as well as the results of the litigation are undetermined because we have reversed the trial court’s property division and alimony award in their entirety and remanded the case for further consideration. Accordingly, we reverse the attorney-fee award and direct the trial court to further consider the issue on remand.

Conclusion

Accordingly, we affirm the judgment of the trial court insofar as it ordered the husband to pay 70% of additional expenses regarding the child; we reverse the judgment of the trial court insofar as it awarded the wife an attorney-fee award of $10,000 and remand the cause for further consideration regarding the attorney-fee award; we reverse the trial court’s award of any portion of the husband’s retirement account to the wife and remand the cause to the trial court to eliminate the award of a portion of the husband’s retirement account; and we reverse the trial court’s alimony award and property division in their entirety so that, on remand, the trial court can fashion a new property division and alimony award without considering the husband’s retirement account as a divisible asset.
The wife’s request for attorney fees on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN, J., concurs.
*229 THOMPSON, P.J., and BRYAN and MOORE, JJ., concur in the result, without writings.

. The husband testified that his 2006 income was less than the previous years’ incomes *223 because he lost a contract with the Department of Human Resources ("DHR”). He further testified that he had initiated litigation regarding the loss of the DHR contract that was still pending at the time of the trial.

. The husband’s mother had died at the time of trial; thus, the husband, the wife, and the husband’s father were the only parties with an interest in the Gee’s Bend property.

. At the close of the July 27, 2010, trial, the parties agreed to amend the divorce complaint to a complaint seeking a legal separation pursuant to Ala.Code 1975, § 30-2-40, in order to allow the wife to remain on the husband's health insurance.

. This court requested that the parties file letter briefs regarding the timeliness of the husband’s appeal. , Specifically, this court questioned whether the husband had timely appealed due to the notation in the State Judicial Information System (“SJIS”) regarding the trial court’s July 26, 2011, order amending the judgment and granting the husband's postjudgment motion in part. Subsequently, the husband filed a Rule 77(d), Ala. R. Civ. P., motion. After considering the parties' letter briefs, this court reinvested the trial court with jurisdiction to consider the husband's Rule 77(d) motion pursuant to Etherton v. City of Homewood, 700 So.2d 1374, 1378 (Ala.1997).
On February 22, 2012, the trial court entered an order granting the husband's Rule 77(d) motion and containing a finding that the trial court's July 26, 2011, order was not entered into the SJIS until September 8, 2011. Pursuant to Rule 58(c), Ala. R. Civ. P., an order or judgment is "entered” “as of the actual date of the input of the order or judgment into the State Judicial Information System.” Thus, the husband's appeal was timely filed.

. Rule 32, Ala. R. Jud. Admin., was amended on November 18, 2008, and the amendments to the rule became effective on January 1, 2009.

. In his appellate brief, the husband makes various other arguments regarding the ways in which the trial court erred in awarding the wife a portion of his retirement account. Due to our determination that wife failed to present sufficient evidence of the portion of the husband’s retirement account that was divisible pursuant to § 30-2-51(b), we pretermit discussion of the husband’s additional arguments regarding this issue on appeal.