MOORE, Judge.
Kennon W. Whaley (“the husband”) appeals from a divorce judgment entered by the Lee Circuit Court (“the trial court”). We affirm the trial court’s judgment in part and reverse it in part.

Procedural History

On April 3, 2013, Rhonda West Whaley (“the wife”) filed a complaint seeking a divorce from the husband. On May 10, 2013, the husband answered the complaint and counterclaimed for a divorce. On June 7, 2013, the wife filed a reply to the counterclaim.
After a trial, the trial court entered an order, on September 29, 2014, divorcing the parties; awarding the parties joint custody of the parties’ children and specifically setting the husband’s custodial periods as every other Friday night through the-following Wednesday morning, on holidays in alternating years, and on certain other special occasions; and reserving the issues of child support, alimony, and property division. After a second trial on the remaining issues, the trial court entered a judgment on November 27, 2015, that, in pertinent part, imputed monthly income of $8,500 to the husband and $1,732 to the wife; ordered the husband to pay $1,127 per month in child support; ordered the husband to pay the wife periodic alimony in the amount of $3,673 per month; ordered the husband to pay $35,000 to the wife as a property settlement; awarded the marital home to the husband; awarded the wife her preexisting 50% share of J & S Investments, LLC; ordered the husband to pay the debts associated with the businesses owned by the parties; ordered the husband to pay 80% of the parties’ joint debts; awarded the wife 20% of “KRIP, LLC, including its intellectual property, proprietary information, patents, patent applications, processes, licenses, and other property rights”; awarded the wife 20% of B & W Holdings, LLC; and awarded the wife 40% of the following businesses: “K2 Enterprises, LLC, including its intellectual property, proprietary information, patents, patent applications, processes, licenses, and other property rights,” Dixieland Metals of Alabama, LLC, Whaley Holdings, LLC, Southeastern Stud, LLC, Southeastern Stud and Components, Inc., K4 Assets, LLC, Dixieland Metals of Mississippi, LLC, and Mid-South Steel, LLC. The trial court further ordered:
“Until such time as [the] Husband’s ... stock or membership interests are more formally transferred to [the] Wife as set out above, [the] Wife shall receive an amount of money equal to 67% of all direct or indirect distributions, payments, or other income, from such companies to [the husband]. Such payments to the Wife shall be made within 24 hours of such payments being made to [the husband].”
Finally, the trial court ordered:
“From almost the beginning of this case, the Husband has been ordered to provide the Wife as much for legal expenses as he spent on himself. Thus far he has managed not to pay his attorneys since that time, but acknowledges owing them at least $150,000 for their extensive services in this case. Therefore the Court awards the same amount to [the] Wife. The HUSBAND shall pay to the WIFE, as an allotment for attorney fees and legal expenses, the sum of $150,000 ..., for which amount judgment is entered in favor of [the] WIFE against the HUSBAND, for which execution may issue as allowed by law.”
(Capitalization in original.) On December 29, 2015, the husband filed a postjudgment *363 motion. On January 8, 2016, the husband filed his notice of appeal. The notice of appeal was held in abeyance until February 9, 2016, when the postjudgment motion was denied. See Rule 4(a)(5), Ala. R.App. P.

Discussion

I. Child Support
On appeal, the husband first argues that the trial court erred in not deviating from the Rule 82, Ala. R. Jud. Admin., child-support guidelines because, he says, the trial court awarded the parties joint physical custody of the children and because, he says, he “was awarded periods of custodial time substantially in excess of those anticipated by the Child Support Guidelines.”
Rule 32(A)(1), Ala. R. Jud. Admin., provides, in pertinent part:
“Reasons for deviating from the guidelines may include, but are not limited to, the following:
“(a) Shared physical custody or visitation rights providing for periods of physical custody or care of children by the obligor parent substantially in excess of those customarily approved or ordered by the court....”
In Boatfield v. Clough, 895 So.2d 354, 356 (Ala.Civ.App.2004), the father in that case appealed, arguing that, because he and the mother had been awarded joint physical custody of their children and because he had been awarded “two nights per week and alternate weekends with the children, i.e., a total of six days out of every two weeks,” the trial court had erred in not deviating from the child-support guidelines. This court explained:
“[The father’s] principal contention is that where parents are awarded joint custody and exercise roughly equal custodial periods, the application of the Child Support Guidelines is manifestly unjust and inequitable and, therefore, a deviation from the Child Support Guidelines is required. However, the father’s contention is refuted by the text of Rule 32 itself. Although Rule 32 acknowledges that, among other reasons, ‘[s]hared physical custody or visitation rights providing for periods of physical custody or care of children by the obli-gor parent substantially in excess of those customarily approved or ordered by the court’ may constitute a ‘[r]ea-son[ ] for deviating from the guidelines,’ the rule further notes that ‘[t]he existence of one or more of the reasons enumerated in this section does not require the court to deviate from the guidelines.’ Rule 32(A)(1), Ala. R. Jud. Admin, (emphasis added). ‘An award of child support resulting from the application of the guidelines is presumed correct,’ Rogers v. Rogers, 598 So.2d 998, 1000 (Ala.Civ.App.1992), and the judgment under review in this case fully comports with the text of Rule 32 and the Child Support Guidelines.”
Boatfield, 895 So.2d at 356.
Similarly, in the present case, the trial court awarded the parties joint physical custody of the children and awarded the husband custody beginning every other Friday night through the following Wednesday morning (less than five days out of every two weeks), on holidays in alternating years, and on certain other special occasions. In accordance with Boatfield, we cannot conclude that the trial court exceeded its discretion in declining to deviate from the child-support guidelines.
Also with regard to child support, the husband argues that the trial court did not follow the assumption “that the custodial parent will take the federal and state income tax exemptions for the children in his or her custody” because, he says, the *364 trial .court required that the wife earn $20,000 per year in order to claim the exemption;,-he also argues that the trial court used a higher amount for health-insurance costs than was warranted. We note, however, that any errors on those points enured to the husband’s favor. “[A] party cannot complain of error in his [or her] favor.” Yeager v. Miller, 286 Ala. 380, 385, 240 So.2d 221, 224 (1970). Accordingly, .we. will not reverse the trial court’s judgment on those points.
The husband also argues that the trial court erred in not imputing a higher income to the wife for child-support purposes.
“The trial court is'afforded the discretion to impute income to a parent for the purpose of determining child support, and the determination that a parent is voluntarily unemployed or underemployed ‘is to be made from the facts presented according to the judicial discretion of the trial court.’ Winfrey v. Winfrey, 602 So.2d 904, 905 (Ala.Civ.App.1992). See also Rule 32(B)(5), Ala. R. Jud. Admin.”
Clements v. Clements, 990 So.2d 383, 394 (Ala.Civ.App.2007). In Mitchell v. Mitchell, 69 So.3d 904 (Ala.Civ.App.2011), this court held that, because the trial court in that case “had before it evidence from which it could have reasonably found that the parties had agreed in 2004 or 2005 that the wife would' stay at homé to get the child ready for school in the morning and to take care of him when he came home from school in the afternoon instead of working” and “that [the wife] had not worked since 2004 or 2005 because of that arrangement!,] ... the wife was not voluntarily unemployed” and, therefore, that the trial pourt had not exceeded its discretion in declining to impute income to the wife. 69 So.3d at 907. Similarly in the present case, although the husband.testified that the wife had obtained a job with Wells Fargo Home Mortgage in 2013, the wife testified that she had worked for Wells Fargo for only a short period, having only gone through their training program, and that she had not received any income for that training. She testified that the last time she had worked full time as a mortgage broker was in 2005, when she had become pregnant with the parties’ older child. The wife testified that she recently had been hired by Interline Mortgage Services, LLC, but that her hiring was dependent upon her passing her licensing exam to regain her license to work as a mortgage loan officer; according to the wife, she had not taken the required exam at the time of the trial. Based on the foregoing, we cannot conclude that the trial court exceeded its discretion in declining to impute a higher income to the wife.
Finally, the husband argues that the trial court erred in imputing a monthly income of $8,500 to him when he had presented evidence indicating that he was earning only $7,000 per month at the time of the final hearing in this case. As stated previously, however,
“[t]he trial court is afforded the discretion to impute income to a parent for the purpose of determining child support, and the determination that a parent is voluntarily unemployed or underemployed ‘is to be made from the facts presented according to the judicial discretion of the trial court.’ Winfrey v. Winfrey, 602 So.2d 904, 905 (Ala.Civ.App.1992). See also Rule 32(B)(5), Ala. R. Jud. Admin.”
Clements, 990 So.2d at 394. The husband’s argument that he was not actually earning $8,500 a month misses the point that a trial court is given the discretion to impute income other than the actual income of a party. We note that the hus *365 band does not present an argument that was he not voluntarily underemployed.
“‘Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do riot, the arguments are waived.’ White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008); see also Bishop v. Robinson, 516 So.2d 723, 724 (Ala.Civ.App.1987) (quoting Thoman [Eng's], Inc. v. McDonald, 57 Ala.App. 287, 290, 328 So.2d 293, 294 (Civ.App.1976)) (noting that an appellant should ‘present his issues “with clarity and without ambiguity”’ and ‘fully express his position on the enumerated issues’ in the argument section of his brief); accord United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (‘It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel’s work, create the ossature for the argument, and put flesh on its bones.’).”
Hudson v. Hudson, 178 So.3d 861, 865 (Ala.Civ.App.2014).
In the present case, the husband has failed to meet the requirements of Rule 28(a)(10), Ala. R.App. P., with regard to the relevant issue affecting the trial court’s determination of his income for child-support purposes. Therefore, we cannot find the trial court in error on this point.
II. Property Division and Alimony
The husband next argues that the trial court exceeded its discretion in its division of the marital property and its award of periodic alimony to the wife.
“ ‘Matters such as alimony and property division are within the sound discretion of the trial court. Ex parte Drummond, 785 So.2d 358 (Ala.2000); Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993); and Montgomery v. Montgomery, 519 So.2d 525 (Ala.Civ.App.1987). The issues of property division and alimony are interrelated, and they must be considered together on appeal. Albertson v. Albertson, 678 So.2d 118 (Ala.Civ.App.1996).’ ”
Walker v. Walker, 216 So.3d 1262, 1270-71 (Ala.Civ.App.2016) (quoting Turnbo v. Turnbo, 938 So.2d 425, 430 (Ala.Civ.App.2006)).
The husband specifically argues that the trial court’s judgment awarding the wife 20% of KRIP, LLC (“KRIP”), was in error because, he says, that corporation is governed by an operating agreement that prevents the transfer of any membership interest without the consent of the other members. The operating agreement of KRIP specifically provides: “No Membership Interest shall be Disposed of ...[,] whether voluntarily or involuntarily, by operation of law or otherwise, without the consent of all the remaining Members .... ” The husband testified that KRIP is owned by him and Ryan Smith, who is the managing member. Smith was not added as a party to the divorce action, and no evidence was presented to suggest that he had consented to the transfer of any of the husband’s interest in KRIP.
Section 10A-5A-1.09(a), Ala.Code 1975, which became effective on January 1, 2015, provides that “[a] limited liability company is bound by and may enforce the limited liability company agreement.” We note that there is no binding Alabama precedent regarding whether a trial court is bound by such an agreement in making an equitable division of property in a divorce; however, in Equitable Division of Property, Brett R. Turner points out that the general rule appears to be that a court is so bound. 3 Brett R. Turner, Equitable Division of Property § 9:6 (3d ed.2015); see also Schiller v. Schiller, 625 So.2d 856, 858 (Fla.Dist.Ct.App.1993) (holding that a “partnership agreement [that] contained] *366 prohibitions against the sale or assignment of a partner’s interest in the partnership without the other’s consent” would be enforced); Kelsey v. Kelsey, 714 N.E.2d 187, 192 (Ind.Ct.App.1999) (noting that “the Partnership Agreement governed Husband’s assignment to Wife”); Nilsen v. Hanson, 709 A.2d 1190, 1191 (Me.1998) (recognizing that, in a divorce action, one party’s “limited partnership interest could not be assigned [to the other party] without the consent of the general partner”); Castonguay v. Castonguay, 306 N.W.2d 143, 145-46 (Minn.1981) (opining that a division of a spouse’s stock in a divorce is an involuntary transfer and would be prohibited when a corporation’s rules prevented involuntary transfers of stock); In re Marriage of Schlichting, 385 Ill.Dec. 859, 871-72, 19 N.E.3d 1055, 1067-68 (2014) (concluding that, “in distributing interest in a company, a divorce court should honor the company’s operating agreement and any transfer restrictions contained therein”); and Burgess v. Burgess, 407 S.C. 98, 108, 753 S.E.2d 566, 572 (Ct.App.2014) (finding that “an in-kind division of the LLCs was impossible due to the restrictions on Husband’s ability to transfer his ownership interest”).[1]
In Kelley v. Kelley, 959 So.2d 109, 113 (Ala.Civ.App.2006), a plurality of this court held that the trial court in that case had erred in disposing of shares of a closely held corporation that were partially owned by the husband without following the terms of a buy-sell agreement entered into by the shareholders of the corporation, thereby indicating this court’s inclination to follow the general rule that restrictions on transfers of stock are binding on a court in effectuating a division of property in a divorce case.[2] We see no reason to depart from the general rule or this court’s previous plurality opinion on this subject.
Based on the foregoing, and in accordance with the general rule on this subject, we conclude that, because the trial court’s judgment dividing the husband’s interest in KRIP fails to comport with the terms of the operating agreement of KRIP, the trial court erred in that regard. We therefore reverse the trial court’s judgment to the extent that it divided the marital property and remand this cause for reconsideration of the division of the marital property in accordance with this opinion. Because the division of property and the award of alimony are interrelated, we also reverse the judgment to the extent that it awarded the wife periodic alimony. Kelley, 959 So.2d at 113; and Walker, 216 So.3d at 1271. We pretermit discussion of the husband’s remaining arguments—that the property division was inequitable and that he lacked the ability to pay the alimony ordered—in light of our disposition of the previous argument.
III. Attorney’s Fees
The husband next argues that the trial court’s judgment awarding the wife *367 attorney’s fees is in error because, he says, the trial court did not have evidence of the amount of the wife’s attorney’s fees and, instead, simply awarded the wife the amount of attorney’s fees charged by the husband’s attorneys. In Frazier v. Curry, 104 So.3d 220, 228 (Ala.Civ.App.2012),[3] this court reasoned:
“[T]he financial circumstances of the parties as well as the results of the litigation are undetermined because we have reversed the trial court’s property division and alimony award in their entirety and remanded the case for further consideration. Accordingly, we reverse the attorney-fee award and direct the trial court to further consider the issue on remand.”
In accordance with Frazier, because we are reversing the alimony and property-division portions of the judgment, we pre-termit discussion of the attorney-fee issue and “reverse the attorney-fee award and direct the trial court to further consider the issue on remand.” 104 So.3d at 228.
IV. Admission of Evidence
The husband finally argues that the trial court erred in allowing the wife to use certain audiotape recordings in the presentation of her case.
“ ““ “[A] judgment cannot be reversed on appeal for an error [in the improper admission of evidence] unless ... it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”’” Mock [v. Allen], 783 So.2d [828] at 835 [ (Ala.2000) ] (quoting Wal-Mart Stores[, Inc. v. Thompson], 726 So.2d [651] at 655 [(Ala. 1998) ], quoting in turn Atkins v. Lee, 603 So.2d 937, 941 (Ala.1992)). See also Ala. R.App. P. 45. “The burden of establishing that an erroneous ruling was prejudicial is on the appellant.” Preferred Risk Mut. Ins. Co. v. Ryan, 589 So.2d 165, 167 (Ala.1991).’
“Middleton v. Lightfoot, 885 So.2d 111, 113-14 (Ala.2003) (emphasis omitted).”
Wood v. Hayes, 104 So.3d 863, 870 (Ala.2012).
In the husband’s brief, he has failed to present an argument regarding how the admission of the recordings harmed his case. Thus, we conclude that he has not met his burden of establishing that the admission of the recordings was prejudicial to him.

Conclusion

Based on the foregoing, we reverse the trial court’s judgment to the extent that it divided the parties’ property and awarded the wife periodic alimony. As a result, we also reverse the trial court’s judgment insofar as it addresses an award of attorney’s fees to the wife. We remand this cause for reconsideration of those issues in light of this court’s conclusion that the husband’s shares of KRIP were erroneously divided in violation of the operating agreement. We affirm the judgment in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
THOMPSON, P. J., concurs in the result, without writing.

. In Castonguay v. Castonguay, 306 N.W.2d at 145, the Minnesota Supreme Court noted: “Only two states have expressly permitted divorce court transfers in contravention to a stock transfer restriction, Louisiana and Texas. Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956); Earthman’s, Inc. v. Earthman, 526 S.W.2d 192 (Tex.Civ.App.Tex1975). Both, however, are community property states.”

. We note that in Clark v. Clark, 58 So.3d 1276 (Ala.Civ.App.2010), this court held that a court was not bound by a limitation on transfers of stock in an operating agreement because the operating agreement did not state that it applied to "an involuntary dissociation caused by a court’s order requiring a member to divest his or her interest in the business as part of a divorce proceeding.” 58 So.3d at 1280. Because, in the present case, the operating agreement specifically applies the limitation on transfers to voluntary and involuntary transfers, we conclude that Clark is inapplicable here.

. The opinion in Frazier was a plurality decision; Judge Thomas authored the opinion, Judge Pittman concurred, and Presiding Judge Thompson, Judge Bryan, and Judge Moore concurred in the result.