PER CURIAM.
Leonard Irving Cottom, Jr. ("the husband"), appeals from the judgment of the Baldwin Circuit Court ("the trial court") that, among other things, divorced him from Kasey Leann Cottom ("the wife").[1] The husband challenges the aspects of the judgment that granted the wife alimony, divided the parties' property, ordered the husband to pay an arrearage amount of unpaid pendente lite periodic alimony, and granted the wife attorney fees. The record does not support the division of property or the calculation of the husband's arrearage as expressed in the judgment. Accordingly, we reverse the judgment and remand the cause.
Facts and Procedural History
The husband and the wife were married on February 25, 1995, in North Carolina. No children were born from the marriage. The husband has the primary ownership interest in several businesses in North Carolina ("the businesses").
On October 21, 2011, the wife filed a complaint in the trial court seeking a divorce from the husband. The husband filed a motion to dismiss, contesting the trial court's subject-matter jurisdiction and personal jurisdiction over him and asserting that the wife's domicile was not in Alabama. The trial court conducted a hearing on the husband's motion. At the hearing, the wife testified that, in 2009, she and the husband left North Carolina, traveled in a recreational vehicle, later emptied their house in North Carolina of personal possessions, and ended up living in Alabama *1160 near her parents' house. On January 6, 2012, the trial court entered an order denying the husband's motion to dismiss. The parties have not raised, and we do not discern, the trial court's jurisdiction as an issue on appeal.
On November 20, 2013, the wife filed a motion seeking to hold the husband in contempt. In her motion, the wife asserted that, after mediation, the parties had reached an agreement in the summer of 2012.[2] She asserted that the husband had agreed to pay her $8,000 a month and $25,000 in September each year pending the outcome of the divorce proceedings. According to the wife, the actual source of the husband's payments to her had been mostly from income generated from the wife's interests in the businesses. The wife asserted that the payments stopped in the spring of 2013 and that, when the husband resumed the payments, the payments were less than the agreed-upon amounts. The wife also asserted that, under the agreement, the husband was to make payments for the mortgage on the house in North Carolina. The husband filed a motion seeking sanctions for the wife's alleged noncompliance with a discovery request.
On January 9, 2014, the trial court conducted a hearing during which the parties announced that they had reached an agreement as to the issues raised in the pending motions. On October 28, 2015, the trial court entered an order, stating, in relevant part:
"The parties advised the Court that they had reached an agreement with regard to their competing motions.
"The payments to the [wife] from the [husband] for the dates of August 1, 2013, through the end of February, 2014, in the nature of temporary spousal support payments [were] made on the morning of January 9, 2014, whereby the [husband] wrote a check to the [wife's] counsel's trust account in the sum of $47,690.00 for temporary support, which is meant to cover support from August 1, 2013 through the end of February, 2014, and giving him credit for $12,000.00 he paid to the [wife] in October, 2013.
"Further, there were four payments of $1230 due on the parties' home in Seven Devils, North Carolina. The [husband] paid one (1) payment of $1,230.00 via U.S. mail sent on or before the date of [the hearing] and the other three remain outstanding.
"The [husband] maintains a claim for a set-off, which is preserved and may be presented at final trial.
"The parties have advised the Court that they have reached an agreement as to a resolution of that matter by way of the [wife] providing certain additional discovery to the [husband].
"Henceforth, the [husband] shall pay the [wife] the sum of $8,000.00 per month, as well as the sum of $25,000.00 in September of each year."
On December 14, 2015, the wife filed a motion seeking to hold the husband in contempt, asserting, in part, that the husband had failed to make the payments of $25,000 in 2014 and in 2015 as required by their agreements and, she asserted, the October 28, 2015, order. On March 16, 2017, the wife filed another motion seeking to hold the husband in contempt, asserting that the husband had failed to make the $25,000 payments in 2014, 2015, and 2016.
The trial court conducted hearings on all pending issues on January 6, 2012, May 17, 2013, June 24, 2013, January 9, 2014, and March 17, 2017. The wife testified that she has multiple sclerosis, that she requires assistance and medical treatments because *1161 of her physical condition, that she has been unable to maintain employment since 2001, and that, besides alimony payments from the husband, her only source of income has been Social Security disability payments. The wife testified that the husband has not made the annual payments that she claimed were due, under their agreements, in September of 2014, 2015, and 2016.
The wife testified that she owned the house in North Carolina in which the parties had previously resided and that she owned shares of stock in the businesses. The wife testified that she and the husband lived in Alabama from December 2009 to the summer of 2011 and that, after the parties' separation, the husband had moved back into the parties' former residence in North Carolina. The husband claimed a marital interest in the North Carolina house.
Documentation submitted as exhibits indicate that the parties collectively owned 163.34 acres of land. The parties referred to some of that land as the "Snow Cloud lots." The wife and the husband both testified that title to 4 Snow Cloud lots are in the wife's name and that the husband had owned a total of 13 Snow Cloud lots. According to the husband's testimony, three Snow Cloud lots were acquired in the wife's name in September 1992 for around $48,000 and, in 1997, those lots were swapped for four lots previously owned by the town in which the lots are located. The husband testified that he purchased eight Snow Cloud lots in 1994 for $500 per lot and that he purchased another five Snow Cloud lots for $500 per lot later in the same year. The husband testified that, in 2006, after giving a discount of $20,000 for the buyer to build a road, he sold eight of the Snow Cloud lots titled in his name for $480,000, or $60,000 per lot.[3] A personal financial statement of the parties dated March 31, 2007, indicates that eight Snow Cloud lots were worth $480,000. According to his testimony, the husband valued eight Snow Cloud lots at a total of $240,000 in his personal financial statement dated August 31, 2011.[4] The husband later testified that the current fair-market value of the five Snow Cloud lots in his name was $10,000 total and that the four lots in the wife's name were worth a total of $8,000.
On June 30, 2017, the trial court entered a judgment divorcing the parties and ordering, in relevant part:
"3. The [wife] is awarded permanent periodic alimony from the [husband] in the amount of $10,000.00 per month, which said payment is due on or before the first day of each month.
"4. In that the [husband] failed to abide by this Court's Temporary Order with reference to an annual temporary spousal support payment of $25,000.00 each year to the [wife] during the pendency of the divorce, and the [husband] failed and refused to make said Court ordered payment in the years 2014, 2015, and 2016, a judgment [is] due to be, and is hereby entered in favor of the [wife] in the sum of $75,000.00, as well as accrued interest of $8,522.00 through April 5, 2017, and $15.41 per day for each day beginning on April 6, 2017, and thereafter, for which execution may issue.
"....
*1162 "6. The [husband] is awarded all interest in all businesses of the parties; and shall pay the [wife] a lump sum payment of $755,650.00 for her interest in said businesses. Said monies are due and payable from the [husband] to the [wife] on or before one hundred eighty (180) days from the date of the Decree of Divorce.
"7. All parcels of real property known as the 'Snow-Cloud lots' shall be awarded to the [husband], and the [wife's] interest in the same shall be transferred to the [husband] upon payment to the [wife] in the sum of one million dollars ($1,000,000.00) for the [wife's] interest in the same. Said monies shall be paid in full to the [wife] prior to her executing any documents necessary to transfer her interest therein to the [husband]. Said monies are due and payable from the [husband] to the [wife] on or before one hundred eighty (180) days from the date of the Decree of Divorce.
"8. The home in Seven Devils, North Carolina, is awarded to the [husband] upon the following conditions: The [husband] shall pay the mortgage payments in the amount of $1,230.00 per month to the [wife] until such time as the [husband] completes the transaction to sell the home. The [husband] shall be responsible for all maintenance and payment of utilities, insurance, upkeep, and the like hereafter. On or before fourteen (14) days from the date of the Decree, the parties shall agree on an appraiser, and, if they cannot agree, each shall select an appraiser (and pay for the same), and the two appraisers shall submit independent appraisals, and said appraisals shall thereafter be averaged. The [husband] shall thereafter purchase the home for said appraised amount, with payments made as follows:
"a. paying off the existing mortgage in the sum of approximately $90,000.00;
"b. paying to the [wife] the sum of $31,980.00 for house payments made by the [wife] whilst the [husband] resided exclusively in the home during the pendency of this divorce; and
"c. paying the [wife] fifty percent (50%) of the equity (i.e., the sum left over after payment of the outstanding mortgage amount and payment of $31,980.00 set forth in 7(c) above [ (sic) ].
"d. The transaction contemplated in this said paragraph shall be fully completed on or before one hundred eighty (180) days from the date of this decree.
"9. Attorney's fees in the amount of $100,000 are hereby awarded to the [wife] and ordered paid by the [husband], offset by the $80,000.00 the wife removed from various sources at the outset of the divorce filing. Thus, the net of $20,000.00 to be paid by the [husband] to the [wife]. Said monies are due and payable from the [husband] to the [wife] on or before one hundred eighty (180) days from the date of the Decree of Divorce.
"....
"12. Each request for relief not specifically addressed herein is due to be, and is hereby DENIED."
On July 28, 2017, the husband filed a motion to alter, amend, or vacate the judgment. The husband also filed a motion for a new trial. In both motions, the husband argued that the trial court had exceeded its discretion in granting the wife $10,000 a month in periodic alimony, in establishing an arrearage based on a finding that the husband had failed to abide by the October 28, 2015, order, in granting the wife a sum for her interest in the businesses, in ordering the husband to make payments on the mortgage and to the wife concerning the house in North Carolina, and in awarding *1163 the wife $100,000 in attorney fees. On August 29, 2017, after conducting a hearing, the trial court entered separate orders denying the motion to alter, amend, or vacate the judgment and the motion for a new trial.
On October 10, 2017, the husband filed a notice of appeal to this court. We have jurisdiction over this appeal pursuant to § 12-3-10, Ala. Code 1975. On appeal, the husband filed a motion to strike a portion of the record.
Standard of Review
"In reviewing a trial court's judgment in a divorce case where the trial court has made findings of fact based on oral testimony, we are governed by the ore tenus rule. Under this rule, the trial court's judgment based on those findings will be presumed correct and will not be disturbed on appeal unless it is plainly and palpably wrong. Hartzell v. Hartzell, 623 So.2d 323 (Ala. Civ. App. 1993). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues. Willing v. Willing, 655 So.2d 1064 (Ala. Civ. App. 1995). Furthermore, a division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Golden v. Golden, 681 So.2d 605 (Ala. Civ. App. 1996). In addition, the trial court can consider the conduct of the parties with regard to the breakdown of the marriage, even where the parties are divorced on the basis of incompatibility. Ex parte Drummond, 785 So.2d 358 (Ala. 2000). Moreover, in Kluever v. Kluever, 656 So.2d 887 (Ala. Civ. App. 1995), this court stated, '[a]lthough this court is not permitted to substitute its judgment for that of the trial court, this court is permitted to review and revise the trial court's judgment upon an abuse of discretion.' Id. at 889."
Langley v. Langley, 895 So.2d 971, 973 (Ala. Civ. App. 2003). "Trial judges enjoy broad discretion in divorce cases, and their decisions are to be overturned on appeal only when they are 'unsupported by the evidence or [are] otherwise palpably wrong.' " Ex parte Bland, 796 So.2d 340, 344 (Ala. 2000) (quoting Ex parte Jackson, 567 So.2d 867, 868 (Ala. 1990) ).
Discussion
We first consider the husband's contentions regarding the trial court's division of the parties' property. The husband argues that the evidence in the record is contrary to the trial court's determination of $1,000,000 as the value of the wife's interest in the Snow Cloud lots. In the judgment, the trial court stated:
"All parcels of real property known as the 'Snow-Cloud lots' shall be awarded to the [husband], and the [wife's] interest in the same shall be transferred to the [husband] upon payment to the [wife] in the sum of one million dollars ($1,000,000.00) for the [wife's] interest in the same. Said monies shall be paid in full to the [wife] prior to her executing any documents necessary to transfer her interest therein to the [husband]. Said monies are due and payable from the [husband] to the [wife] on or before one hundred eighty (180) days from the date of the Decree of Divorce."
Although the judgment awards the wife $1,000,000 in exchange for the transfer of her interest in the Snow Cloud lots, we cannot find support in the record for the award. The evidence consistently indicates that the wife did not have more than four Snow Cloud lots titled in her name. Although the evidence regarding the value of the lots widely varied, there is no evidence *1164 indicating that the value of four of the lots together could have reasonably amounted to $1,000,000.[5]
The wife argues that this portion of the judgment was equitable because, she asserts, the trial court could have reasonably determined the value of all the Snow Cloud lots to be $1,360,000. The wife appears to arrive at that total by asserting that the husband had 13 Snow Cloud lots and that she had 4 lots, for a total of 17 lots, at the time of the trial and that the lots were valued at $80,000 a lot. The record indicates, however, that the husband had sold eight of the lots that had been titled in his name. If the parties owned nine lots valued at $80,000 a lot, the total value of the Snow Cloud lots would be $720,000, or significantly less than the award to the wife. We note that we are not directed to evidence in the record that would support valuing the lots at $80,000 a lot. The wife alternatively calculates the total value of 17 lots to be $1,020,000, at $60,000 a lot, but the wife does not explain why she would receive almost the total value of the Snow Cloud lots as her interest. Thus, there does not appear to be any basis in the record for such a division of those properties as asserted by the wife.
The wife further asserts that the trial court could have been attempting to compensate the wife for her portion of the 163.34 acres of land the parties collectively owned. The provision in the judgment, however, refers to the Snow Cloud lots, does not mention any other land, and does not indicate that the award regarding the Snow Cloud lots was in compensation for interest in other property awarded to the husband. Because the record does not support a reasonable valuation of the wife's interest in the Snow Cloud lots to be $1,000,000, we reverse that portion of the judgment.
In addition to the valuation of the Snow Cloud lots, the husband also challenges the portions of the judgment granting the wife $10,000 a month in periodic alimony, ordering him to pay the wife for her interest in the businesses, and ordering him to pay off the mortgage on the parties' house in North Carolina and to pay the wife 50% of the equity in the house as well as certain mortgage payments. "Matters of alimony and property division are interrelated ...." Langley, 895 So.2d at 973. Because we are reversing the award of $1,000,000 for the wife's interest in the Snow Cloud lots, we also reverse the other aspects of the trial court's division of the parties' property and the award of alimony as well. We pretermit discussion of the issues raised by the husband regarding those portions of the judgment.[6]
The husband further challenges the trial court's determination that $75,000 was the amount of the arrearage the husband owed the wife for missed pendente lite alimony payments. In the judgment, the trial court stated:
"In that the [husband] failed to abide by this Court's Temporary Order with reference to an annual temporary spousal support payment of $25,000.00 each year to the [wife] during the pendency of the divorce, and the [husband] failed and refused to make said Court ordered payment in the years 2014, 2015, and 2016, a judgment [is] due to be, and is hereby entered in favor of the [wife] in *1165 the sum of $75,000.00, as well as accrued interest of $8,522.00 through April 5, 2017, and $15.41 per day for each day beginning on April 6, 2017, and thereafter, for which execution may issue."
The husband asserts that the trial court's October 28, 2015, order, referred to as the "Court's Temporary Order" in the divorce judgment, did not require him to make annual payments of $25,000 for 2014 and 2015. In the October 28, 2015, order, the trial court stated, in relevant part: "Henceforth, the [husband] shall pay the [wife] the sum of $8,000.00 per month, as well as the sum of $25,000.00 in September of each year." (Emphasis added.) Because the order was entered on October 28, 2015, the order did not require the husband to make any annual payments in September 2014 or in September 2015.
The wife asserts that the parties had reached a pendente lite agreement regarding spousal support on January 9, 2014, and that the husband did not make the annual payments for 2014 and 2015 pursuant to that agreement. Regarding pendente lite alimony, " 'though an agreement may be binding upon the parties in a divorce case, it is not binding upon the court. In rendering judgment, the court may accept or reject such an agreement, in whole or in part.' " Johnson v. Johnson, 191 So.3d 164, 172 (Ala. Civ. App. 2015) (quoting Porter v. Porter, 441 So.2d 921, 924 (Ala. Civ. App. 1983) ). The divorce judgment refers to the husband's failure to make "court ordered payments" in 2014 and 2015, but we are not directed to any order of the trial court requiring the payments to be made. The language of the October 28, 2015, order did not require the husband to make a payment of $25,000 in September 2014 or in September 2015. Therefore, the calculation of the arrearage in the judgment representing unpaid court-ordered obligations overstates the total amount by including those amounts. As a result, we reverse the portion of the judgment determining the husband's arrearage, and we remand the cause for the trial court to reconsider the issue.
The husband also argues that the trial court exceeded its discretion in awarding the wife $100,000 in attorney fees. Because we have reversed the trial court's property division and alimony award and remanded the cause for further proceedings, " '[t]he financial circumstances of the parties as well as the results of the litigation are undetermined.' " Whaley v. Whaley, 218 So.3d 360, 367 (Ala. Civ. App. 2016) (quoting Frazier v. Curry, 104 So.3d 220, 228 (Ala. Civ. App. 2012) (plurality opinion) ). Accordingly, we pretermit discussion of the husband's contentions regarding attorney fees and remand the cause to the trial court for further consideration of the attorney-fee issue.
Conclusion
For the forgoing reasons, we reverse the judgment of the trial court, and we remand the cause for proceedings consistent with this opinion. The wife's request for an award of attorney fees on appeal is denied. The husband's motion to strike is denied as moot.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman, Thomas, and Moore, JJ., concur.
Donaldson, J., concurs specially, with writing.
DONALDSON, Judge, concurring specially.
Rule 43, Ala. R. App. P., provides, in relevant part:
"(a) Death of a Party. When the death of a party has been suggested, the proceeding shall not abate, but shall continue or be disposed of as the appellate court may direct.
*1166 "....
"(c) Substitution. An order of substitution may be entered at any time, but the omission to enter such order shall not affect the substitution."
The Committee Comments to Rule 43 state, in relevant part:
"This rule provides that no appeal shall fail because of the death ... of any party. It is flexible in its application to permit action to proceed in accordance with the court's direction on a case by case basis. In accordance with the general spirit of the rules, the omission of an order of substitution is not fatal, but can be made at any time under subdivision (c)."
On October 31, 2018, after the briefs were filed and the appeal was submitted to this court, a suggestion of the death of the appellant, Leonard Irving Cottom, Jr., was filed by the appellee, Kasey Leann Cottom. The suggestion stated:
"COMES NOW the Appellee Kasey Leann Cottom, and files this suggestion of death of Appellant Leonard Irving Cottom, Jr. Appellee shows that Appellant Leonard Irving Cottom, Jr. died on or about October 11, 2018.
"Appellee requests this Court to consider whether the appellate proceeding shall continue or be disposed, as directed in Ala. R. App. Proc. Rule 43(a)."
Counsel for the appellant filed a response later on October 31, 2018, which stated:
"1. Counsel for Appellee is correct in that the Appellant recently passed away on or around October 11, 2018 while the present matter is pending on appeal.
"2. However, if a party dies during the pendency of an appeal, the appeal does not abate. Rule 43(a), Ala. R. App. P.; Cox v. Dodd, 242 Ala. 37, 4 So.2d 736 (1941) ; Woodruff v. Gazebo E. Apartments, 181 So.3d 1076, 1080 (Ala. Civ. App. 2015) ; and Kaufman v. Kaufman, 22 So.3d 458, 460 (Ala. Civ. App. 2007) (Appellate Court held the appeal should not be abated because a final divorce judgment had been entered between the parties before the husband's death.)
"3. The Final Decree of Divorce in the present matter currently on appeal was entered June 30, 2017. The Appellant passed away in and around October of 2018.
"4. Due to a final judgment of divorce being entered and appeal being taken before the Appellant's death, the appeal should not be abated and should continue forward."
Although Rule 43 provides that the death of a party on appeal does not automatically abate the proceedings, it recognizes that the death may affect the disposition of the appeal and the appellate proceedings in some manner. This court chose not to request supplemental briefs from the parties as to the effect of the appellant's death on the issues raised in this appeal before the appellant's death or on any issues to be addressed by the Baldwin Circuit Court in the event of a remand. It appears to me that, if there are issues to be addressed on remand, some of the caselaw that could be applicable may pre-date the adoption of Rule 43. Nevertheless, we are not asked to address those questions or other issues that might be presented by the death of the appellant. Accordingly, I concur with this court's decision to proceed with issuing the opinion.

On October 31, 2018, after the submission of the appeal, the wife filed a suggestion of death of the husband in this court. The husband's counsel filed a response confirming that the husband died on or around October 11, 2018, during the pendency of this appeal. Nevertheless, we "proceed to resolve the issues raised in this appeal." Slamen v. Slamen, 254 So.3d 188, 191 n.1 (Ala. 2017) ; see Rule 43(a), Ala. R. App. P. ("When the death of a party has been suggested, the proceeding shall not abate, but shall continue or be disposed of as the appellate court may direct."); Cox v. Dodd, 242 Ala. 37, 39, 4 So.2d 736, 737 (1941) ; and Woodruff v. Gazebo East Apartments, 181 So.3d 1076, 1080 (Ala. Civ. App. 2015).

The record does not contain an order of the trial court adopting that agreement.

The husband initially testified that the eight Snow Cloud lots were sold in 2008, but he later testified that the sales were reported as capital gains on the parties' 2006 joint federal tax return.

It is unclear from the record why those financial statements reflected eight Snow Cloud lots. The record reflects that, at the time those statements were prepared, the husband owned five Snow Cloud lots and the wife owned four.

We note that the husband testified that the current fair-market value of each lot was $2,000 but that he had valued eight of the lots at $480,000, which is $60,000 per lot, in 2007.

We note that, " '[i]n Alabama, periodic alimony payments cease at the death of either spouse.' " Wheeler v. Wheeler, 831 So.2d 629, 635 (Ala. Civ. App. 2002) (quoting Kelley v. State Dep't of Revenue, 796 So.2d 1114, 1118 (Ala. Civ. App. 2000) ).