The lone issue remaining in this probate matter, which began in May 1998, is the amount of the attorney fee that should be awarded to J. Glenn Cobb, guardian ad litem for Jamarkus Rabb, the minor son of Fred Lee Harris, deceased. The probate court (hereinafter referred to as "the trial court") awarded Cobb attorney fees totaling $4,000 for his work representing Rabb. On appeal, Cobb argues that this amount inadequately compensates him for the work he has done representing Rabb from July 1998, when he was appointed guardian ad litem, until the present. We affirm.
 I.
This case began with the death of Fred Lee Harris on May 8, 1998. Harris died intestate and was survived by a wife and 13 children, including Jamarkus Rabb, the only minor among the heirs. On July 30, 1998, J. Glenn Cobb was appointed guardian ad litem for Rabb.
Among the assets held by Harris at his death was a bank account at Gulf Federal Bank containing approximately $34,500 ("the bank account"). The bank account was in both Harris's and Rabb's names. On August 19, 2003, the trial court ruled *Page 403 
that Rabb was entitled to one-half of the funds in the bank account and that the estate was entitled to the other half. Arguing that he was entitled to the entire sum, Rabb appealed the trial court's decision to this Court.
On November 15, 2004, this Court remanded the cause to the trial court because no final settlement order had been entered. The trial court took no action on remand, and on
December 20, 2004, this Court dismissed Rabb's appeal as being from a nonfinal judgment. Rabb v. Estate of Harris
(No. 1030308).
On March 2, 2005, the trial court entered an order approving final settlement of Harris's estate. The order again awarded Rabb one-half of the funds in the bank account. The order also awarded Cobb $3,000 for his work as guardian ad litem for Rabb. On March 25, 2005, Rabb filed a postjudgment motion arguing 1) that he was entitled to all of the funds in the bank account and 2) that Cobb was entitled to a larger attorney fee.
The trial court subsequently solicited briefs from the parties on the issue of account ownership. On June 28, 2005, the trial court, entered an order purporting to reverse its previous decision and award Rabb the entire contents of the bank account. The order also provided that Cobb had until July 12, 2005, to submit evidence supporting his request for additional compensation and reimbursement of expenses and scheduled a hearing for July 15, 2005, to further consider his request. However, this order was void for lack of jurisdiction because, pursuant to Rule 59.1, Ala. R. Civ. P., Rabb's postjudgment motion had already been denied by operation of law on June 23, 2005.[1]
On July 25, 2005, Rabb appealed to this Court, repeating the arguments he had made in his postjudgment motion. On October 7, 2005, he filed a motion to remand the case to the trial court. This Court initially denied the motion to remand; however, on December 15, 2005, in response to a motion to reconsider filed jointly by Rabb and Harris's estate, we remanded the case to the trial court for 60 days. On December 21, 2005, the trial court notified the parties that they had until January 4, 2006, to file additional pleadings. Otherwise, the trial court stated, it would enter an order substantially identical to the June 28, 2005, order that had been untimely.
Rabb was the only party to file an additional pleading in response to the trial court's order. That pleading was devoted almost exclusively to the issue of Cobb's attorney fee. On February 7, 2006, the trial court entered its final order. The order awarded Rabb all of the funds in the bank account. In regard to the issue of the attorney fee, the trial court stated, in pertinent part:
 "H. As noted in the Court's March 2, 2005 order, the [guardian ad litem] requested payment for 62.45 hours allegedly expended in 1998, 1999, 2000 and 2001, plus reimbursement of $16.00 of parking expenses. The [guardian ad litem] has requested payment of 409.2 hours of time allegedly expended with regard to this matter from January 1, 2002 through January 25, 2005 and reimbursement of $323.07 for advanced expenses during said time period. The *Page 404 
expenses for the latter time period were for postage, parking and photocopying according to the [guardian ad litem]. No itemization of the actual expenses was furnished to the Court. The [guardian ad litem] stated that his customary hourly rate for work of this nature is $150.00.
 "I. The long time practice of this Court, predating the undersigned, is that parking expenses for legal counsel are not allowed. The general practice in the Mobile legal community is that lawyers do not seek reimbursement of ordinary, `run of the mill' postage expenses, if the lawyers are being compensated on an hourly basis for the preparation of the documentation being sent through the postal service.
 "J. The long time practice of this Court where the Court is being requested to award or confirm attorney's fees, especially in a contested situation or a situation where substantial fees are being requested, is for legal counsel to maintain written records regarding the time expended on the matter at hand and to furnish said information to the Court. Further, in these instances legal counsel itemizes expenses for the Court. This Court's long time practice and procedure mirrors the long time practices in the federal and other courts in the Alabama state judicial system in the Mobile area. The [guardian ad litem] has practiced law for many years and should be very familiar with the practices and procedures of the federal and state courts in the Mobile area.
 "K. The burden is on legal counsel to furnish to trial courts the information needed for trial courts to make fee determinations. Trial courts should be furnished sufficient information to enable them to make legal determinations that have some factual bases to support the determinations being made.
 "L. The Court gave the [guardian ad litem] ample opportunity to address the factors specified in Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740 (Ala. 1988).
 "M. With regard to the time expended by the [guardian ad litem] for the time period of January 1, 2002 through January 25, 2005, the Court has no way of identifying what activities of the [guardian ad litem] should be compensated. It should be noted that during said time period the [guardian ad litem] embarked upon an unsuccessful (and unwarranted) appeal of this Court's ruling concerning the Bank Account.[2]
 "N. With regard to the expenses the [guardian ad litem] requested reimbursement that are associated with the time period of January 1, 2002 through January 25, 2005, the Court has no way of knowing what part of said expenses constitute parking expenses (which are not reimbursable as noted above) or properly allowed reimbursement.
 "O. Before issuance of the March 2, 2005 order, the Court considered the factors relating to legal counsel compensation specified in Van Schaack, supra, and concluded that the [guardian ad litem] should be compensated for 30 hours of work on behalf of Rabb and that a reasonable hourly rate to utilize for quantifying the [guardian ad litem's] compensation was $100.00 per hour. Further, upon consideration of said factors, the Court concluded that the *Page 405 
[guardian ad litem] should not be reimbursed for any of the requested expenses.
 "P. Since the June 28, 2005 order, the Court has afforded the [guardian ad litem] more than one opportunity to present evidence for the Court to utilize in determining the appropriate fee and reimbursement of expenses this Court should award to the [guardian ad litem]. The Court practically gave the [guardian ad litem] a road map in terms [of] what information the [guardian ad litem] should furnish. The [guardian ad litem] has defiantly refused to do so.
 "Q. The [guardian ad litem] apparently contends that all time the [guardian ad litem] has expended should be awarded, using an hourly rate furnished by the [guardian ad litem].
 "R. The [guardian ad litem] apparently contends that because the Court has changed its ruling and determined that the [guardian ad litem's] client is entitled to the Bank Account, the [guardian ad litem] should be awarded all of the fees requested by the [guardian ad litem]. The [guardian ad litem] fails to take into account that the Court changed its ruling based upon legal argument furnished by other
legal counsel in other cases and the Court's additional research on the issue. The change in the ruling was not related to any effort on the part of the [guardian ad litem].
 "S. The approximate balance of the Bank Account is $34,500.00.
 "T. If the Court awarded the [guardian ad litem] a fee based upon all of the time requested by the [guardian ad litem] at the hourly rate suggested by the [guardian ad litem], such fee would be $70,747.50 1471.65 hours × $150.00), plus reimbursement of expenses of $339.07. This would equate to more than twice the amount of Bank Account and would result in Rabb not receiving anything.
 "U. The [guardian ad litem's] compensation request relating to time expended before January 25, 2005 is factually unsupported and untenable.
 "V. The [guardian ad litem] has not requested reimbursement of any legal fees or reimbursement of expenses associated with the time period following January 25, 2005. Notwithstanding the [guardian ad litem's] failure to request compensation relating to his activities on behalf of Rabb since January 25, 2005, the Court is aware of said services because of the appeal to the Alabama Supreme Court and the remand request made to the Alabama Supreme Court.
 "W. The Court is of the opinion and therefore concludes that the [guardian ad litem] should be paid $1,000.00 as compensation for services rendered by the [guardian ad litem] from January 25, 2005, to the current time."
Following the entry of the trial court's order, the case was returned to this Court, for a review of the attorney-fee award. The parties declined to file any additional briefs; we now consider the matter.
 II. "`The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion.' Ex parte Edwards, 601 So.2d 82, 85 (Ala. 1992). Our deference to the trial court in attorney-fee cases is based upon our recognition that the trial court, which has presided over the entire litigation, has a superior understanding of the factual questions that must be resolved in fee determinations. See Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, *Page 406 76 L.Ed.2d 40 (1983). Nevertheless, the trial court's order regarding an attorney fee must allow for meaningful review by articulating the decisions made, the reasons supporting those decisions, and the performance of the attorney-fee calculation. American Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir.1999); see also Hensley, 461 U.S. at 437, 103 S.Ct. 1933."
City of Birmingham v. Horn, 810 So.2d 667, 681-82
(Ala. 2001). Moreover, an applicant for an attorney fee bears the burden of proving entitlement to the fee. Ex parteEdwards, 601 So.2d 82, 85 (Ala. 1992). Thus, we review the trial court's decision awarding Cobb a total of $4,000 as an attorney fee to determine if in setting the amount of that award the trial court exceeded its discretion.
 III.
Cobb states that he worked 471.65 hours on this case, that his hourly rate is $150, and that he had additional expenses of $339.07. Accordingly, he argues that the trial court's decision awarding him only $3,000 for his work on this case through January 25, 2005, grossly under-compensates him for the work he has done for Rabb since he was appointed guardian ad litem in July 1998.[3] As evidenced by its February 7, 2006, order, the trial court concluded that Cobb had failed to substantiate his request for an attorney fee. Therefore, it performed its own calculation, guided by the factors this Court enumerated inVan Schaack v. AmSouth Bank, N.A., 530 So.2d 740 (Ala. 1988), and arrived at the figure of $3,000 for work performed through January 25, 2005, and the $1,000 figure awarded on remand for work performed after that date.
At the trial court level, Cobb supported his request for an attorney fee with two forms, which appear to be local to the Mobile Probate Court. Each form is entitled "Expense Voucher for Guardian Ad Litem, Administrator Ad Litem, or Court Representative" ("expense voucher"). The first expense voucher, which bears a stamp indicating that it was filed January 24, 2002, covers the years 1998, 1999, 2000, and 2001. It is signed by Cobb and states, in pertinent part:
 "Number of hours spent in court: 20.50
 "Number of hours spent in interviews, telephone calls, preparation of case, review of pleadings and documents: 41.95
 "Total number of hours: 62.45
 "Miscellaneous expenses: $16.00
 "Reason: Parking at $1.00 per hr
 "Customary hourly rate you charge other clients for similar services: $150.00"
The second expense voucher is substantially identical to the first; however, it covers the period from January 1, 2002, through February 11, 2005. It is also signed by Cobb and is stamped as filed in the trial court on February 11, 2005. It states, in pertinent part:
 "Number of hours spent in court: 73
 "Number of hours spent in interviews, telephone calls, preparation of case, review of pleadings and documents: 336.2
 "Total number of hours: 409.2
 "Miscellaneous expenses: $323.07
 "Reason: Postage, parking, copies, etc.
 "Customary hourly rate you charge other clients for similar services: $150.00"
The expense vouchers appear to be the only materials submitted by Cobb in support of his attorney-fee request. Cobb argues that it is the custom in the Mobile *Page 407 
Probate Court that these completed expense vouchers are all that is required of guardian ad litems to receive an attorney fee. He further claims that that has been the practice since at least the 1950s. Based on this understanding of the process and notwithstanding the trial court's repeated requests, Cobb refused to itemize the time claimed or to provide further documentation or evidence. Rather, in the final document Cobb submitted to the trial court, made after this Court remanded the case in December 2005, he instead stated:
 "Wherefore, the [guardian ad litem] presumes that the Probate Judge will just have to take his word for all that set out herein and all that has been filed and stated earlier in this Court by the [guardian ad litem]. The only proof or `documentation' that this Probate Court seems to demand in its last order will not be produced. If the Court wants that (whatever is meant by `that') it will have to look for some other source than this [guardian ad litem]. Aside from it being a useless act, and impossible to perform, in the opinion of the [guardian ad litem], that would still not satisfy the Court. All that this Court has done, and whatever it now does in this matter and with the individuals involved for so long, is on the shoulders of this Court. The [guardian ad litem] does not condemn the Court now and does not want to speak harshly to it now. The [guardian ad litem] would be wrong in doing that. In the opinion of the [guardian ad litem], all persons involved, in this now 7.42 year matter, will rejoice when it is finally and completely ended and concluded. The [guardian ad litem] does find some remorse in that the `Good Old Days,' of trust and respect, seem to be long gone. That was when a man's word was his bond and, a statement of fact, from an attorney to a judge, in writing or by voice, was accepted as true. Apparently, this is not now the rule in this Court. Too bad, the days of respect, trust and honesty have now, seemingly, passed by some folks."
An applicant for an attorney fee bears the ultimate burden of proving that he or she is entitled to that award.Edwards, 601 So.2d at 85. In this case, Cobb failed to meet that burden. In Horn, we explained the rationale for requiring an attorney to prove that he or she is entitled to an attorney fee:
 "Applicants for an attorney fee bear the burden of proving their entitlement to an award and documenting their appropriately expended hours. Edwards, 601 So.2d at 85; see also Hensley [v. Eckerhart], 461 U.S. [424] at 437, 103 S.Ct. 1933
[(1983)] (citing the importance of documenting in fee applications the hours expended). `The applicant should exercise "billing judgment" with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.' Hensley, 461 U.S. at 437, 103 S.Ct. 1933 (citation omitted). As the United States Court of Appeals for the Eleventh Circuit stated in American Civil Liberties Union of Ga. v. Barnes, [168 F.3d 423 (11th Cir. 1999)]:
 "`If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are "excessive, redundant, or otherwise unnecessary." Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.' *Page 408 
 "168 F.3d at 428."
810 So.2d at 682.
In this case, the expense vouchers Cobb submitted to the trial court indicate that he kept some track of the time he expended on the case. However, if he "maintain[ed] billing time records in a matter that [would] enable a reviewing court to identify distinct claims," 810 So.2d at 682, he inexplicably refused to share those records with the trial court. Hensley v.Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40
(1983). Accordingly, he has not met his burden of showing that he is entitled to the claimed attorney fee and we cannot say that the trial court exceeded its discretion by awarding him a lower amount.
 IV.
Cobb argues that the attorney fee he was awarded by the trial court for his service as guardian ad litem for Rabb was excessively low. However, because Cobb refused to substantiate his request for an attorney fee with any evidence or documentation, such as itemized billing records, the trial court did not exceed its discretion in relying on its own expertise and judgment to award Cobb a lesser amount. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
SEE, HARWOOD, STUART, and BOLIN, JJ., concur.
[1] Rule 59.1, Ala. R. Civ. P., provides that a trial court's failure to dispose of a post-judgment motion within 90 days of filing "shall constitute a denial of such motion as of the date of the expiration of the [90-day] period." Rabb's motion was filed March 25, 2005; accordingly, it was denied by operation of law on June 23, 2005, five days before the trial court entered its order purporting to rule on the motion.
[2] Elsewhere in the order, the trial court states that it had advised Cobb before he filed the first appeal on Rabb's behalf that the court's ruling regarding ownership of the bank account was not final and that Cobb should wait until a final order was issued before filing an appeal.
[3] Cobb made his argument before the trial court awarded him an additional $1,000 on remand for services he performed after January 25, 2005.