MOORE, Judge.
Kennon W. Whaley ("the husband") appeals from a judgment entered by the Lee Circuit Court ("the trial court") divorcing him and Rhonda West Whaley ("the wife"). We reverse the trial court's judgment.
Procedural History
This is the second time these parties have been before the court. See Whaley v. Whaley, 218 So.3d 360 (Ala. Civ. App. 2016). This court set forth the pertinent procedural history in Whaley as follows:
"On April 3, 2013, [the wife] filed a complaint seeking a divorce from the husband. On May 10, 2013, the husband answered the complaint and counterclaimed for a divorce. On June 7, 2013, the wife filed a reply to the counterclaim.
"After a trial, the trial court entered an order, on September 29, 2014, divorcing the parties; awarding the parties joint custody of the parties' children and specifically setting the husband's custodial periods as every other Friday night through the following Wednesday morning, on holidays in alternating years, and on certain other special occasions; and reserving the issues of child support, alimony, and property division. After a second trial on the remaining issues, the trial court entered a judgment on November 27, 2015, that, in pertinent part, imputed monthly income of $8,500 to the husband and $1,732 to the wife; ordered the husband to pay $1,127 per month in child support; ordered the husband to pay the wife periodic alimony in the amount of $3,673 per month; ordered the husband to pay $35,000 to the wife as a property settlement; awarded the marital home to the husband; awarded the wife her preexisting 50% share of J & S Investments, LLC; ordered the husband to pay the debts associated with the businesses owned by the parties; ordered the husband to pay 80% of the parties' joint debts; awarded the wife 20% of 'KRIP, LLC, including its intellectual property, proprietary information, patents, patent applications, processes, licenses, and other property rights'; awarded the wife 20% of B & W Holdings, LLC; and awarded the wife 40% of the following businesses: 'K2 Enterprises, LLC, including its intellectual property, proprietary information, patents, patent applications, processes, licenses, and other property rights,' Dixieland Metals of Alabama, LLC, Whaley Holdings, LLC, Southeastern Stud, LLC, Southeastern Stud and Components, Inc., K4 Assets, LLC, Dixieland Metals of Mississippi, LLC, and Mid-South Steel, LLC. The trial court further ordered:
" 'Until such time as [the] Husband's ... stock or membership interests are more formally transferred to [the] Wife as set out above, [the] Wife shall receive an amount of money equal to 67% of all direct or indirect *390 distributions, payments, or other income, from such companies to [the husband]. Such payments to the Wife shall be made within 24 hours of such payments being made to [the husband].'
"Finally, the trial court ordered:
" 'From almost the beginning of this case, the Husband has been ordered to provide the Wife as much for legal expenses as he spent on himself. Thus far he has managed not to pay his attorneys since that time, but acknowledges owing them at least $150,000 for their extensive services in this case. Therefore the Court awards the same amount to [the] Wife. The HUSBAND shall pay to the WIFE, as an allotment for attorney fees and legal expenses, the sum of $150,000 ..., for which amount judgment is entered in favor of [the] WIFE against the HUSBAND, for which execution may issue as allowed by law.'
"(Capitalization in original.) On December 29, 2015, the husband filed a postjudgment motion. On January 8, 2016, the husband filed his notice of appeal. The notice of appeal was held in abeyance until February 9, 2016, when the postjudgment motion was denied. See Rule 4(a)(5), Ala. R. App. P."
218 So.3d at 362-63.
On appeal, the husband challenged, among other things, the trial court's division of property, the award of alimony to the wife, and the award of attorney's fees to the wife. The husband specifically argued that that portion of "the trial court's judgment awarding the wife 20% of KRIP, LLC ('KRIP'), was in error because, he said, that corporation is governed by an operating agreement that prevents the transfer of any membership interest without the consent of the other members." 218 So.3d at 365. This court agreed, and we reversed the trial court's judgment and remanded the cause for reconsideration of the entire division of property and the award of alimony in light of our opinion. 218 So.3d at 365-66. We pretermitted discussion of the remaining issues.
On remand, the trial court entered an amended judgment on September 29, 2016. On October 28, 2016, the husband filed a postjudgment motion. On November 29, 2016, the wife responded to the postjudgment motion and moved the trial court to hold the husband in contempt. On December 14, 2016, the trial court entered a judgment vacating the September 29, 2016, amended judgment and entering a new amended judgment. With regard to the division of property and the award of alimony, the December 14, 2016, amended judgment awarded the wife $610,000 in alimony in gross "payable immediately"; "her pre-existing 50% [interest in] J & S Investments, LLC"; and 40% of Whaley Holdings, LLC, Southeastern Stud, LLC, Southeastern Stud and Components, Inc., K4 Assets, LLC, Dixieland Metals of Mississippi, LLC, and Mid-South Steel, LLC. The amended judgment also awarded the wife "l00% of K2 Enterprises LLC, including its real property, equipment, contractual rights, intellectual property, proprietary information, patents, patent applications, processes, licenses, leases and all other property rights," and "51% of Dixieland Metals of Alabama, LLC, including its real property, equipment, contractual rights, intellectual property, proprietary information, patents, patent applications, processes, licenses, leases and all other property rights." The trial court did not award the wife any percentage of KRIP, LLC ("KRIP"), or B & W Holdings, LLC. All other provisions in the November 27, 2015, judgment, including the imputation of $8,500 in monthly income to the husband, the *391 attorney-fee award of $150,000, and the periodic-alimony award of $3,673 per month, were left unchanged.[1]
On January 23, 2017, the husband filed his notice of appeal.
Facts
At the trial, the husband testified that the only asset he owns an interest in that has positive equity is a limited-liability company with the name "Eco-Green." He testified that K2 Enterprises, LLC ("K2"), owns half of Eco-Green and that K2's portion of Eco-Green is valued at $222,500.[2] According to the husband's evidence, Dixieland Metals of Alabama, LLC ("Dixieland Metals-Alabama"), has assets in the amount of $1,601,490 and liabilities in the amount of $2,006,984, for a negative equity of $405,494. He testified that Dixieland Metals-Alabama's bank account had a balance of $74,000.
According to the husband, Southeastern Stud and Components, Inc., has no income, has no bank account, and is in bankruptcy. He also testified that J & S Investments, LLC, and B & W Holdings, LLC, have no bank accounts and no income and that their only assets are in the process of foreclosure. The husband's evidence indicated that KRIP; Whaley Holdings, LLC; Southeastern Stud, LLC; K4 Assets, LLC; and Mid-South Steel, LLC, have no income, no assets, and no bank accounts. He also testified that K2 has no income, no bank account, and no assets other than its 50% ownership of Eco-Green. Finally, he testified that Dixieland Metals of Mississippi, LLC, has no bank account, no income, and no assets, and that it owes $300,000 to the State of Mississippi.
The husband testified that the marital home had been foreclosed upon, and there is a lawsuit pending against the parties regarding the second mortgage balance of $450,000. The husband testified that he has a life-insurance policy with a cash value of $25,256.89, and he has a bank account with a balance of between $8,000 and $9,000.
The husband testified that Mill Steel, a creditor of Southeastern Stud and Components, Inc., had forced Southeastern Stud and Components, Inc., into involuntary bankruptcy and had tried to exercise membership rights to the following limited-liability companies that had signed as obligors on an agreement involving Southeastern Stud and Components, Inc.: KRIP, Dixieland Metals-Alabama, K2, J & S Investments, LLC, Mid-South Steel, LLC, and Southeastern Stud, LLC. He testified that Mill Steel had not yet been successful in exercising membership rights to K2.
According to the husband, KRIP owns the rights to certain patents, and, he said, if KRIP receives a $25,000,000 investment, KRIP could obtain royalties off the patent up to $2,000,000 per year. He testified, however, that he had been unable to find an investor.
The husband testified that his gross income consists of $9,821.89 per month that he receives from Eco-Green through the 50% interest that K2 owns in Eco-Green; he testified that his net income is $7,300 per month. According to the husband, the parties' personal and business debts total $4,682,011.03.
The wife, on the other hand, testified that, during the marriage, the husband had deposited approximately $19,000 into their bank account every month. She also testified that the husband had told her in December 2014 that he had never received *392 less than $10,000 per month from K2's interest in Eco-Green and that he had usually received between $10,000 and $15,000 a month from that source. She testified that, during the marriage, the parties had purchased jewelry worth at least $60,000. She also testified that she has approximately $10,000 in personal property and that the husband has personal property valued at between $60,000 and $100,000.
The wife testified that she "wouldn't have any idea where to put a number on [the parties'] marital estate." She testified that she believes that K2 is worth $500,000 and that J & S Investments, LLC, is worth approximately $1,400,000. According to the wife, financial statements that had been completed concerning the parties' assets during the marriage had indicated that they had assets worth $4,000,000. She admitted, however, that, since those financial statements were completed, the husband was no longer receiving a salary, or distributions, from Southeastern Stud and Components, Inc., although he had been receiving between $150,000 and $250,000 per year when those statements had been completed.
Standard of Review
" ' " '[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.' Philpot v. State, 843 So.2d 122, 125 (Ala. 2002). ' "The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment." ' Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala. 1985) )."
" ' Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala. 2005).' "
Sullivan v. Sullivan, 211 So.3d 836, 839 (Ala. Civ. App. 2016) (quoting Weeks v. Weeks, 27 So.3d 526, 529 (Ala. Civ. App. 2008) ). "Where the question on appeal is purely a question of law, the ore tenus rule does not apply and appellate review is de novo." Keevan v. Keevan, 796 So.2d 379, 381 (Ala. Civ. App. 2001).
Discussion
On appeal, the husband challenges the trial court's division of property, its award of alimony, and its award of attorney's fees.
I. Division of Property and Award of Periodic Alimony
" 'Matters such as alimony and property division are within the sound discretion of the trial court. Ex parte Drummond, 785 So.2d 358 (Ala. 2000) ; Parrish v. Parrish, 617 So.2d 1036 (Ala. Civ. App. 1993) ; and Montgomery v. Montgomery, 519 So.2d 525 (Ala. Civ. App. 1987). The issues of property division and alimony are interrelated, and they must be considered together on appeal. Albertson v. Albertson, 678 So.2d 118 (Ala. Civ. App. 1996).
" 'In dividing property and awarding alimony, a trial court should consider "the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; [the parties'] station[s] in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the cause of the divorce." Russell v. Russell, 777 So.2d 731, 733 (Ala. Civ. App. 2000). Also, a trial court is not required to make an *393 equal division of the marital property, but it must make an equitable division based upon the particular facts and circumstances of the case. Golden v. Golden, 681 So.2d 605 (Ala. Civ. App. 1996) ; and Brewer v. Brewer, 695 So.2d 1 (Ala. Civ. App. 1996). "A property division that favors one party over another does not necessarily indicate an abuse of discretion." Fell v. Fell, 869 So.2d 486, 496 (Ala. Civ. App. 2003) (citing Dobbs v. Dobbs, 534 So.2d 621 (Ala. Civ. App. 1988) ).'
" Turnbo v. Turnbo, 938 So.2d 425, 429-30 (Ala. Civ. App. 2006)."
Walker v. Walker, 216 So.3d 1262, 1270-71 (Ala. Civ. App. 2016).
With regard to the periodic-alimony award, the husband argues that he lacks the ability to pay $3,673 per month to the wife.
"Once the financial need of the petitioning spouse is established, the trial court should consider the ability of the responding spouse to meet that need. Shewbart [v. Shewbart ], 64 So.3d [1080,] 1088 [ (Ala. Civ. App. 2010) ]. 'For purposes of determining a spouse's ability to pay, and for purposes of calculating an appropriate amount of periodic alimony, the trial court should ordinarily use the spouse's net income as the starting point for these evaluations.' Rieger v. Rieger, 147 So.3d 421, 431 (Ala. Civ. App. 2013)."
McCarron v. McCarron, 168 So.3d 68, 79 (Ala. Civ. App. 2014).
The husband testified that his gross income is approximately $9,800 per month, which, he said, he receives from Eco-Green through the 50% interest that K2 owns in Eco-Green; he testified that his net income is $7,300 per month. The trial court specifically imputed $8,500 in income to the husband. We note, however, that, in the trial court's amended judgment, it awarded the wife 100% of K2. Therefore, the wife now owns K2's 50% interest in Eco-Green and will receive all income therefrom. We presume that, in imputing income to the husband of $8,500 per month, the trial court considered the actual net income of $7,300 per month the husband was receiving from K2. Under the terms of the amended judgment, the husband will no longer receive that income, leaving him unable to pay his periodic-alimony obligation or to meet his own living expenses. We, therefore, conclude that the trial court's periodic-alimony award exceeded the trial court's discretion. Walker, 216 So.3d at 1270-71 ; McCarron, 168 So.3d at 76.
The husband also argues that the award of alimony in gross is not supported by the evidence of the value of the marital estate. "Alimony in gross is considered 'compensation for the [recipient spouse's] inchoate marital rights [and] ... may also represent a division of the fruits of the marriage where liquidation of a couple's jointly owned assets is not practicable.' " TenEyck v. TenEyck, 885 So.2d 146, 151 (Ala. Civ. App. 2003) (quoting Hager v. Hager, 293 Ala. 47, 54, 299 So.2d 743, 749 (1974) ). Alimony in gross is a property settlement and must "be payable out of the present estate of the paying spouse as it exists at the time of the divorce." Id. at 151-52. An award of alimony in gross that exceeds the value of the payor's estate exceeds the trial court's discretion. Redden v. Redden, 44 So.3d 508, 513 (Ala. Civ. App. 2009). "The burden of proving the value of marital property rests with both parties." Beck v. Beck, 142 So.3d 685, 695 (Ala. Civ. App. 2013).
The husband testified that K2's portion of Eco-Green is valued at $222,500, that he has a life-insurance policy with a cash value of $25,256.89, and that he has a bank *394 account with a balance of between $8,000 and $9,000. He testified that all the other assets have either been foreclosed upon, have no value, or have a negative value. The wife, on the other hand, testified that the parties' financial statements during the marriage had indicated that they had assets worth $4,000,000. She also testified, however, that she "wouldn't have any idea where to put a number on [the parties'] marital estate." Furthermore, the only specific assets to which she assigned a value were (1) the husband's personal property, which she testified was valued at between $60,000 and $100,000; (2) her personal property, which she testified was valued at approximately $10,000; (3) K2, which she was awarded and which she valued at $500,000; and (4) J & S Investments, LLC, of which each party was awarded 50%, which she valued at approximately $1,400,000. Therefore, even deeming the wife's testimony accurate, we can glean from her testimony only that the husband was awarded assets valued at no more than $800,000 (one-half the value of J & S Investments, LLC, plus the value of his personal property).
The trial court ordered the husband to pay all the debts associated with the businesses and 80% of the parties' joint debts. Based on evidence in the record, that provision substantially reduces the present value of the husband's estate by $4,121,304.79.
Considering the husband's testimony that the marital estate had a negative value, that the wife failed to present evidence sufficient to establish the value of the marital assets, and that the trial court ordered the husband to pay $4,121,304.79 to satisfy the debts of the marriage, we conclude that the evidence shows that the award to the wife of alimony in gross in the amount of $610,000 exceeds the value of the husband's present estate. Therefore, we conclude that the trial court exceeded its discretion on this point. See, e.g., Redden, 44 So.3d at 513.
The husband further argues that there are insufficient liquid assets from which he can pay the alimony-in-gross award "immediately." Because we are reversing the alimony-in-gross award, we pretermit discussion of this point.
The husband also argues that the trial court's awards of K2 and DixieLand Metals-Alabama are too broad. We note, however, that the husband raised this issue to the trial court only as to K2. Therefore, as to DixieLand Metals-Alabama, that argument is waived. Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992) ("This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.").
With regard to K2, the husband points to § 10A-5A-5.01, Ala. Code 1975, a part of the Alabama Limited Liability Company Law of 2014, § 10A-5A-1.01 et seq., Ala. Code 1975, which provides: "The only interest of a member that is transferable is the member's transferable interest." "Transferable interest" is defined as "a member's right to receive distributions from a limited liability company or a series thereof." Ala. Code 1975, § 10A-5A-1.02(s) ; see also Ala. Code 1975, § 10A-5A-5.02(b).
In the amended divorce judgment, the trial court specified that the following were included in the award to the wife of K2: "its real property, equipment, contractual rights, intellectual property, proprietary information, patents, patent applications, processes, licenses, leases and other property rights." Because the trial court's judgment went beyond awarding the wife the husband's "transferable interest," i.e., *395 his right to receive distributions, we conclude that the trial court's judgment on this point was in error. See, e.g., Whittaker v. Whittaker, 228 W.Va. 84, 88, 717 S.E.2d 868, 872 (2011) (recognizing that the "family court does not have jurisdiction to order a limited liability company to transfer its assets").[3]
The husband further argues that the portion of the judgment providing that the wife "shall be allowed to see a ledger of the most recent financial transactions of any of the [business interests that the wife was awarded] upon request, and shall be provided an Income Statement, a Cash Flow Statement, and a Statement of Financial Position on a quarterly basis" violates § 10A-5A-5.02(a)(4), Ala. Code 1975. We note, however, that the husband failed to raise this argument to the trial court. Therefore, we will not hold the trial court in error on this point. See, e.g., Andrews v. Merritt Oil Co., 612 So.2d at 410.
The husband also argues that the litigation with Mill Steel prevents him from transferring any assets. We note, however, that the trial court's judgment specifically states that all awards are subject to any security interests. Therefore, we conclude that the plain language of the judgment gives the husband protection from potential double liability. See, e.g., Hallman v. Hallman, 802 So.2d 1095, 1098 (Ala. Civ. App. 2001) ("The words of a judgment are to be given their plain and ordinary meanings, and the intentions of the parties are derived from them ....").
II. Attorney's Fees
The husband argues the trial court erred in awarding the wife attorney's fees because, he says, the wife did not request those fees in her complaint, the issue was not tried by consent, there was no evidence of the reasonableness of the services provided, and he lacks the ability to pay those fees.
Although the wife did not specifically request in her complaint that the husband be required to pay her attorney's fees, she did request "other, further, general, and special relief." Furthermore, on July 28, 2014, the trial court entered a pendente lite order requiring the husband to pay the wife's attorney's fees in the same amount as he paid his own attorney. The wife subsequently filed motions seeking to enforce that order. At the trial, evidence was adduced as to the amount the husband had paid his attorneys in this action. The husband does not point this court to any objection to the consideration of the attorney-fee issue during or before the trial. Based on the foregoing, we conclude that the issue of attorney's fees was litigated with the implied consent of the husband. See, e.g., Tidwell v. Tidwell, 379 So.2d 614, 615 (Ala. Civ. App. 1980).
With regard to the amount of the fees, we note:
*396 " ' " 'The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion.' Ex parte Edwards, 601 So.2d 82, 85 (Ala. 1992). Our deference to the trial court in attorney-fee cases is based upon our recognition that the trial court, which has presided over the entire litigation, has a superior understanding of the factual questions that must be resolved in fee determinations. See Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)...." ' "
Tanner v. Tanner, 241 So.3d 28, 32 (Ala. Civ. App. 2017) (quoting Rabb v. Estate of Harris, 953 So.2d 401, 405-06 (Ala. 2006), quoting in turn City of Birmingham v. Horn, 810 So.2d 667, 681-82 (Ala. 2001) ).
" 'Applicants for an attorney fee bear the burden of proving their entitlement to an award and documenting their appropriately expended hours. [ Ex parte] Edwards, 601 So.2d [82] at 85 [ (Ala. 1992) ] ; see also Hensley [v. Eckerhart ], 461 U.S. [424] at 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 [ (1983) ] (citing the importance of documenting in fee applications the hours expended).' "
Tanner, 241 So.3d at 32 (quoting Rabb, 953 So.2d at 407-08, quoting in turn City of Birmingham v. Horn, 810 So.2d at 682 ).
In the present case, it appears that the trial court did not consider evidence regarding the value of the legal services provided by the wife's attorney, including the number of hours expended on the case. Instead, the trial court stated that it was ordering the husband to pay the wife's attorney the same amount that the husband had paid his attorney. We conclude that that method falls short of the legal requirements set forth by our supreme court of " 'proving [the attorney's] entitlement to an award [of attorney's fees] and documenting [the attorney's] appropriately expended hours.' " Rabb, 953 So.2d at 407 (quoting City of Birmingham v. Horn, 810 So.2d at 682 ). Therefore, we conclude that the trial court erred in entering its award of attorney's fees.
Conclusion
Based on the foregoing, we reverse the trial court's judgment to the extent that it divided the parties' property, awarded the wife alimony in gross and periodic alimony, and awarded the wife attorney's fees. We remand this cause for the trial court to reconsider the division of property, the awards of alimony in gross and periodic alimony, and the award of attorney's fees in light of this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Pittman, Thomas, and Donaldson, JJ., concur.
Thompson, P.J., dissents, with writing.

The wife's motion for contempt was denied.

ChemCoaters, LLC, an Indiana company not owned by the parties, owns the other half of Eco-Green.

The wife has argued that the prior limited-liability-company law that was enacted by Ala. Acts 2009, Act No. 2009-513, which was effective January 1, 2011 ("the prior LLC law"), is applicable here. We note, however, that this court applied the Alabama Limited Liability Company Law of 2014, which was enacted by Ala. Acts 2014, Act No. 2014-144, in the previous appeal. The wife did not file a brief in the previous appeal, nor did she file an application for a rehearing. Therefore, the application of the Alabama Limited Liability Company Law of 2014 became the law of the case. See, e.g., United Fire Ins. Co. v. Purma, 792 So.2d 1092, 1994 (Ala. 2001). In any case, we note that the prior LLC law, similarly to the current law, provided that "[a]n assignment [of a member's interest] only entitles the assignee to the financial rights of the assignor to the extent assigned." Ala. Code 1975, § 10A-5-6.02(a)(3) (repealed by Ala. Acts 2014, Act No. 2014-144, p. 265, § 3, effective January 1, 2017).