[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-12537
Non-Argument Calendar

————————————————

D.C. Docket No. 1:19-cv-01086-KD-MU
Bkcy No. 15-bk-01883-JCO

In re: RAYMOND & ASSOCIATES, LLC,

Debtor.

————————————————————————————————

CANDACE LAFORCE,

Plaintiff-Appellant,

versus

TERRIE S. OWENS,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Alabama

————————————————

(December 29, 2020)

Before JORDAN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Candace LaForce appeals the district court's decision affirming the bankruptcy court's order sustaining the objections of Raymond & Associates, LLC's trustee to, and disallowing, her claim to settlement money from the British Petroleum-Deepwater Horizon oil spill litigation that was paid to the bankrupt company.  Like the district court, we also affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This appeal involves three related cases:  (1) Candace and Raymond LaForce's Alabama state court divorce[1]; (2) Raymond's individual bankruptcy in the Southern District of Alabama bankruptcy court; and (3) Raymond & Associates's bankruptcy, also in the Southern District of Alabama bankruptcy court. Here's a brief description of each case.

### *The divorce*

In September 2011, Candace and Raymond began their divorce proceedings in Alabama state court.  In January 2016, the state court entered a divorce decree awarding Candace twenty-five percent "of the common stock" in Raymond & Associates.  Raymond & Associates was a member-managed, Alabama limited

---

[1] Because Candace and Raymond share the same last name, to avoid confusion we will use their first names in this opinion.

liability company that manufactured boats for personal and commercial use. Raymond was the sole member and manager of the company.

The state court also awarded Candace forty percent of the "net claim" Raymond & Associates had pending against BP related to the Deepwater Horizon oil spill.  In April 2016, the state court, in an amended divorce decree, described Candace's "net claim" this way:

> If [the BP] claim is a corporate asset, which has been listed in the Bankruptcy proceeding, then the Court does note that the husband shall be awarded 60% of the net BP claim, after bankruptcy claims have been adjudicated by the Bankruptcy Court, which might have priority towards these BP claims.  The wife shall be awarded the remaining 40%.

> If this is a personal individual asset which is subject to the husband's individual bankruptcy creditors, the husband shall be awarded 60% of the net asset after superior bankruptcy creditors have been adjudicated by the bankruptcy court. The wife shall be awarded the remaining 40%.

*Raymond's individual bankruptcy*

Meanwhile, in September 2014, Raymond filed for chapter 11 bankruptcy. To continue their divorce proceedings, Candace requested and received relief from the automatic stay imposed by Raymond's individual bankruptcy.

Because of the ongoing divorce proceedings, in September 2017, the bankruptcy court found that Raymond's individual bankruptcy estate did not include Candace's equitable interest in the marital property.  In re LaForce, 577 B.R. 908, 916 (Bankr. S.D. Ala. 2016).  The bankruptcy court found that:

> When [Raymond] filed for divorce, equity converted [Raymond] from the holder of legal title to the marital assets into a trustee of the marital assets until the divorce could be finally resolved. Accordingly, this Court finds that the filing of the divorce proceeding created a constructive trust in the marital estate in favor of [Candace].

Id. at 914. Candace, as the beneficiary of an equitable interest in the marital property, the bankruptcy court concluded, was entitled to a priority claim ahead of Raymond's individual creditors. Id. at 916 n.3.

*Raymond & Associates's company bankruptcy*

In June 2015, while the divorce proceedings and Raymond's individual bankruptcy were still ongoing, Raymond & Associates also filed for chapter 11 bankruptcy. The company eventually converted its bankruptcy to a chapter 7 proceeding, and a trustee was appointed. Candace did not seek and did not obtain relief from the automatic stay in Raymond & Associates's bankruptcy.

Four things happened in the company bankruptcy relevant to this appeal. In 2017, Candace filed a proof of claim related to the company's pending BP litigation. In May 2019, the bankruptcy court approved Raymond & Associates's $4.6 million settlement with BP. Then, in June 2019, Candace amended her proof of claim to $1,417,360.60, which was forty percent of the settlement (after deducting the professional fees incurred in settling the claim). And in August and September 2019, the trustee and the company's other creditors objected to Candace's amended claim.

4

The trustee contended that Raymond & Associates's assets, including the BP settlement, were insufficient to pay the company's secured creditors, so there was nothing left to distribute to the members of the limited liability company.  Candace responded that her share of the BP settlement was marital property that was held in a constructive trust for her benefit as a result of the divorce decree.  Thus, she said, her share of the BP settlement was not part of Raymond & Associates's bankruptcy estate and the company's secured creditors were not entitled to it.

The bankruptcy court sustained the trustee's objections and disallowed Candace's amended proof of claim.  The bankruptcy court concluded that the divorce decree did not make the BP settlement marital property that gave Candace priority over the company's secured creditors.

> The plain language and terminology used in the Divorce Decree acknowledges the superiority of [Raymond & Associates]'s bankruptcy creditors.  Hence, this Court does not interpret the Divorce Decree to carve out corporate assets for the benefit of [Candace] in contravention of the orderly disposition of [Raymond & Associates]'s assets in accordance with the Bankruptcy Code.

Under Alabama law, the bankruptcy court explained, Raymond & Associates, as a limited liability company, was "a distinct entity, to be considered separate and apart from the individuals who compose it and [was] not to be affected by the personal rights and obligations and transactions of its [members]."  Candace, the bankruptcy court said, was Raymond's creditor but not the company's.  As a creditor of a member (Raymond) of a limited liability company, Candace only had "the right to

5

pursue claims to distributions which the member would otherwise be entitled to receive." Candace did "not have a direct claim to the assets" of Raymond & Associates. Because the money from the BP settlement was not enough to satisfy all of the company's creditors, there was nothing left to distribute to Raymond as a member (which distribution would have flowed to Candace under the amended divorce decree).

The district court affirmed.

## STANDARD OF REVIEW

"Because the district court in reviewing the decision of a bankruptcy court functions as an appellate court, we are the second appellate court to consider this case." In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994). And because permitting or disallowing a proof of claim is a "core proceeding," 28 U.S.C. § 157(b)(2)(B); Wortley v. Bakst, 833 F.3d 1313, 1319 (11th Cir. 2017), "we review determinations of law made by either the district or bankruptcy court de novo, while reviewing the bankruptcy court's findings of fact for clear error." Westgate Vacation Villas, Ltd. v. Tabas, 443 F.3d 767, 770 (11th Cir. 2005).

## DISCUSSION

Candace argues that the BP settlement was marital property, and therefore not subject to Raymond & Associates's other creditors, because (1) the state court had the authority to, and did, award her forty percent of the settlement as part of the

6

divorce, and (2) the bankruptcy court, in Raymond's individual bankruptcy, determined that the BP settlement was marital property excluded from Raymond & Associates's bankruptcy estate. We disagree.

First, the amended divorce decree did not order that the BP settlement was marital property, and the decree did not give Candace priority over Raymond & Associates's creditors—it did the exact opposite. The amended divorce decree granted Candace a forty percent interest in the "net BP claim" that would pay out only "after bankruptcy claims have been adjudicated by the [b]ankruptcy [c]ourt, which might have priority towards these BP claims." "Net" means "[t]he final amount remaining after all other amounts have been taken away." Black's Law Dictionary 1250 (11th ed. 2019). By awarding Candace the "net" BP settlement, after the bankruptcy claims had been adjudicated, the state court was giving her forty percent of what was left of the BP settlement after other amounts had been taken away by Raymond & Associates's bankruptcy creditors. The amended divorce decree put Candace in line after the company's other bankruptcy claims were paid— not in front. Because Raymond & Associates owed more to its creditors than the total amount the company received as part of the BP settlement, there was nothing left of the "net" after the claims had been adjudicated by the bankruptcy court.

Also, as the bankruptcy court explained, the state court could not have made Raymond & Associates's BP settlement a part of Candace's marital estate because

7

the settlement was the property of the company—which was not a party to the divorce—and not the property of her ex-husband. For Alabama limited liability companies, "[t]he only interest of a member that is transferable is the member's transferable interest," and a "transferable interest" is "a member's right to receive distributions from a limited liability company or a series thereof." Whaley v. Whaley, 261 So. 3d 386, 394 (Ala. Civ. App. 2017) (quoting Ala. Code §§ 10A-5A-1.02(t), -5.01). Where a state "court's judgment [goes] beyond awarding the wife the husband's 'transferable interest,' i.e., his right to receive distributions, . . . the [state] court's judgment on this point [is] in error." Id. at 394–95; see also Hackney v. Hackney, 794 So. 2d 1159, 1165 (Ala. Civ. App. 2002) (finding that the divorce court could only assign the proceeds from a husband's company "if the husband collects them").

The only interest that the state court could have granted Candace was Raymond's transferrable interest in the company—his right to receive distributions—and only if Raymond actually received a distribution. See Hackney, 794 So. 2d at 1165. That is what the state court did in the amended divorce decree by awarding Candace the "net BP claim . . . after bankruptcy claims [had] been adjudicated."

Candace argues that the state court could have awarded her more than Raymond's transferrable interest because Raymond & Associates was a closely held

company that Raymond treated as his alter ego. Alabama, like other states, allows a creditor to pierce the corporate veil—and get company property—if the debtor treats his closely held company as his alter ego. See, e.g., Mosley v. Builders South, Inc., 41 So. 3d 806, 812 (Ala. Civ. App. 2010) (recognizing an exception to the general rule when "one or both spouses treat a closely held corporation as an alter ego . . . so long as the principal of the corporation was properly before the court."). But neither the state court nor the bankruptcy court found that Raymond & Associates was Raymond's alter ego, and Candace hasn't presented any evidence to suggest that it was. Without a finding or evidence that the company was Raymond's alter ego, the general rule stands that one spouse cannot be awarded the property of a non-party limited liability company in which the other spouse is a member.

Finally, Candace argues that the bankruptcy court, in Raymond's individual bankruptcy, found that the BP settlement was marital property, relying on this language from the individual bankruptcy court's order: "[Candace]'s equitable interest in the marital estate property would not come into [Raymond]'s bankruptcy estate." In re LaForce, 577 B.R. at 916. But, as this language shows, the bankruptcy court's order said nothing about the BP settlement being part of the marital estate and it didn't even mention Raymond & Associates. See id. at 911–12, 916. All the bankruptcy court said was that Candace's equitable interest in the marital estate—

9

whatever that may turn out to be—was not part of Raymond's individual bankruptcy estate.  See id. at 916.

The same bankruptcy judge that presided over Raymond's individual bankruptcy also presided over Raymond & Associates's company bankruptcy.  If anyone knew what the order meant, the judge who wrote it would, and, as he explained:  "This Court did not . . . make any determination as to the assets comprising the marital estate; nor did it declare that the BP claim of the corporate entity constituted marital property."  The order "entered in Raymond LaForce's [i]ndividual [c]ase has no applicability to the [c]orporate [c]ase.  The parties and issues are not the same and this Court did not intend its ruling to have any applicability to the [c]orporate [c]ase."  The order "in the [i]ndividual [c]ase does not provide a basis for Ms. LaForce's claim in this corporate proceeding."  Like the district court, we agree.

## CONCLUSION

For these reasons, we, too, affirm the bankruptcy court's order sustaining the trustee's objections and disallowing Candace's proof of claim to Raymond & Associates's BP settlement.

**AFFIRMED.**